MAINS *v.* WEBBER'S ESTATE.

1. HUSBAND AND WIFE—SEPARATE PROPERTY—WIFE'S PARAPHER-
   NALIA.

   Articles of personal adornment purchased by a husband for
   the use of his wife belong to him, as against the wife's admin-
   istrator, in the absence of proof of a gift to the wife.

2. SAME—GIFT—EVIDENCE.

   Evidence that certain jewels were worn by a wife at will, and
   that she held the key to the box in which they were kept, is
   insufficient to justify a finding that they belonged to her as
   against her husband, where it is also shown that she had no
   separate estate, that the jewel box was deposited in a vault
   at the husband's bank, and that, after her death, the jewels
   were worn by his second and third wives.

3. SAME—BANK DEPOSIT—OWNERSHIP—QUESTION FOR JURY.

   Whether a certificate of deposit standing in the name of a wife
   at her death was owned by her or her husband is a question for
   the jury, on evidence that she paid no consideration for the cer-
   tificate, that it was never beyond the control of the husband,
   and that he received the earnings thereof.

4. SAME—EVIDENCE.

   Upon such issue, the testimony of the bank cashier as to how
   the certificate was left with him, and for whom he was hand-
   ling it, is inadmissible.

5. SAME.

   But it is competent to show the transactions between the hus-
   band and wife which culminated in the issuance of the certif-
   icate, and that there was no secrecy by the husband in deal-
   ing with the fund.

6. SAME—RIGHTS OF ADMINISTRATOR.

   An administrator of a wife has no right to a certificate of de-
   posit standing in the name of the wife, but representing a
   fund owned by the husband.

7. SAME—CLAIMS—LACHES.

   The failure of the estate of a wife to present a claim against
   the husband for property alleged to have belonged to the wife,
   during the 10 years which he survived her, is a circumstance
   which the jury may consider in determining the justness of
   the claim.

Error to Ionia; Davis, J.   Submitted April 24, 1902.
(Docket No. 14.)   Decided June 24, 1902.

Eldon P. Mains, administrator of the estate of Antoinette
C. Webber, deceased, presented a claim against the estate
of George W. Webber, deceased, for the value of property
alleged to have been converted by him in his lifetime.
The claim was disallowed in the probate court, and claim-
ant appealed to the circuit, where defendant again pre-
vailed.   Claimant brings error.   Affirmed.

*V. H. & H. H. Smith,* for appellant.

*Morse & Locke* (*Knappen, Kleinhans & Knappen,* of
counsel), for appellee.

HOOKER, C. J.   George W. and Antoinette C. Webber
were husband and wife.   It was a childless marriage, and
she died April 11, 1890.   While George W. Webber was
a member of the United States Congress, Antoinette
Webber spent some time in Washington; and while there
she was seen to wear the diamonds in controversy in this
suit, and she frequently wore them afterwards.   They were
kept in a jewel box, of which she had the key; the box
being deposited in the safety vault in a bank in Ionia, of
which George W. Webber was a part owner.   There is no
evidence that they were a part of her separate property,
except the foregoing.   There is a possible inference that
she did not purchase the property; her sister having testi-
fied that she received no property from her father, and
nothing being shown to indicate that she had any property;
and there is a possible inference that George W. Webber
purchased the diamonds for her use, from the testimony
of his nephew, who said to his uncle, George W. Webber,
that "the diamonds that auntie had were very nice ones;"
that Webber simply made some remark that they were
nice,—something of that kind,—and did not enter into any
discussion with him as to when he bought them, or how
much he paid for them, or the fact that he had given them
to his wife.

On January 14, 1879, George W. Webber was a stock-holder in the Second National Bank of Ionia. On that date he surrendered a certificate of 200 shares, and had issued to his wife, Antoinette, a certificate for 10 shares, and to himself a certificate for the remaining 190 shares. On the same date she was elected director, and continued such until January 8, 1889,—a few days before the liquidation of the bank. During the period that she was a stockholder, semi-annual dividends were paid by checks issued by the cashier, and generally made payable to the order of Mrs. Webber. They were sent by mail to her address, and were subsequently deposited to the bank account of George W. Webber, usually bearing the indorsement of Antoinette C. Webber. The Second National Bank went into voluntary liquidation January 15, 1889, and was succeeded by the private bank of Webber Bros., of whom George W. was one. On the liquidation of the Second National Bank, there was issued by the banking firm of Webber Bros. a certificate of deposit, dated February 12, 1889, to the order of Mrs. George W. Webber, for $1,632.40, bearing 4 per cent. interest, and representing the proceeds of the Second National Bank stock which had stood in her name. This certificate of deposit was renewed from time to time, and was kept in the bank in a pouch accessible to the bank officers. The interest on the certificate was credited to the account of George W. Webber. About two months after the death of Mrs. Webber, upon the maturity of the current certificate of deposit, Mr. Herbert B. Webber, the cashier, who was the general custodian of the certificate in question, as well as of papers of George W. Webber, took the certificate of deposit, and surrendered it without indorsement, and caused the teller to issue a new certificate to Mrs. George W. Webber, and to credit the interest to George W. Webber's bank account. Similar renewals were had subsequently. On November 2, 1891, the certificate of deposit was surrendered by George W. Webber in the presence and with the approval of Herbert B. Webber, and the amount of that certificate

was put into a new certificate of deposit for $20,000 issued to George W. Webber. The certificate of deposit was reduced from time to time until, before the death of George W. Webber, which occurred January 15, 1900, all had been drawn out.

The relatives of Mrs. Webber caused letters of administration to issue upon the estate of Antoinette C. Webber, and their claim to be filed against the estate of George W. Webber, deceased, for the amount of the certificate of deposit, and payments of interest thereon from the date of its first issue, and also for the value of the diamonds mentioned. The case was tried in the circuit before a jury. The court held there could be no recovery for the diamonds, and submitted to the jury the question whether or not George W. Webber was the real owner of the fund represented by the certificate of deposit. A verdict was rendered for the defendant.

The evidence shows that, after the death of Antoinette Webber, George W. Webber married again, and the diamonds continued to be kept, as before, in the jewel box and in the bank vault, and they were used at will by his second wife. At her death, Mr. Webber married the lady who is now his widow,—Mrs. Ella Webber. She has worn the diamonds, and kept them, when not being worn, at the bank, in the same way that the first and second Mrs. Webber did. It is contended on behalf of the defense that the jewels were a part of the paraphernalia of Antoinette Webber, procured for her use by her husband, and that, in the absence of proof that they became part of her separate estate through gift from her husband, the claimant should not recover.

In the case of *Hawkins* v. *Railroad Co.*, 119 Mass. 596 (20 Am. Rep. 353), it was held that personal apparel furnished by a husband to his wife, or purchased by the wife, with the consent of her husband, with money given her by him from a fund formed by their joint earnings, remained the property of the husband, and the wife could not maintain an action against a carrier for the loss thereof.

In the case of *Smith* v. *Abair*, 87 Mich. 62 (49 N. W. 509), it was held that a husband has a sufficient title to the wearing apparel purchased by his wife with his money to enable him to maintain replevin against an officer who seizes it upon a tax warrant in satisfaction of a tax assessed against the wife upon her separate property. The opinion indorsed the ruling of the circuit judge, who said:

"The statutes of the State have made no change in the common-law rule that the obligation to furnish the wife with her wearing apparel, the same as in the case of a man with minor children, is imposed upon the husband still, and, as in the case of a man with minor children, the wearing apparel belongs to the husband, as between himself and a third person who undertakes to remove it."

This court said further:

The husband "may insure it as his own property; * * * [and] the purchase of the property for her use is no more a gift to her than is the purchase of apparel for a minor child such a gift to that child as would devest the parent of a right to recover it from a third person."

Again it was said:

"The statute of distribution of estates of intestates, re-enacted since the married woman's act, provides that the widow shall be allowed all her articles of apparel and ornaments. This would indicate that, without such a provision, these articles would constitute a part of decedent's estate, and would be liable, as such, to be sold for the payment of his debts."

In the case of *Curtis* v. *Railroad Co.*, 74 N. Y. 122 (30 Am. Rep. 271), it was said:

"At common law, during coverture, the wife's paraphernalia belonged to the husband. * * * The statute has not changed the rule, except that the wife's paraphernalia is secured to her, even against creditors. The title is in the husband, when he has paid for the articles and furnished them. Nor do the statutes in reference to the rights of married women, and gifts of personal property from the husband to the wife, affect the husband's right, until a gift has been actually made and is proved. * * * Where there is a gift, the wife may bring an action, but otherwise the husband must sue."

The cases of *Rawson* v. *Railroad Co.*, 48 N. Y. 215 (8 Am. Rep. 543), and *Whiton* v. *Snyder*, 88 N. Y. 306, and *Cummings* v. *Friedman*, 65 Wis. 183 (26 N. W. 575, 56 Am. Rep. 628), are not inconsistent with this doctrine, as they are all predicated upon the assumption that the wife had acquired title through gift or otherwise; and, though it may be contended that a gift may be presumed from mere possession, such is not the holding of all the cases, and in this case we think the presumption is overcome by the evidence adduced. In saying this, we do not assent to the proposition that a gift is to be presumed from the mere possession by a wife of her wearing apparel. We think that the court committed no error in taking this question from the jury.

The other item was properly left to the jury. There was testimony in the case tending to show that the stock in the national bank was received by the wife without consideration, and that such stock, and the certificate of deposit which was afterwards given, with its proceeds, were never beyond the control of the husband. He seems to have had at all times the earnings of both the stock and the certificate. The jury having passed upon that question, we must take it as settled.

Many errors are assigned upon the proceedings. Of these, several relate to the testimony of Herbert B. Webber, who was asked to state how the certificates of deposit were left with him, and for whom he was handling them. The court sustained objections to these questions, and in this he did not err. It was for the jury to determine, from what was said and done, whom this deposit was made by, and for whom it was held. We think it was competent to show the history of the transaction between George W. Webber and his wife which culminated in the giving of the certificate of deposit. It was also competent to show by Herbert B. Webber that there was no secrecy upon the part of George W. Webber in his dealings with this fund.

Some testimony was offered tending to show that the father of Antoinette Webber was insane, and for a long time an inmate of the Kalamazoo asylum at the expense of George W. Webber. It was understood, and the jury was told, that that testimony had no bearing except as it tended to show that Antoinette Webber received no property from her father. We think the claimant suffered no injury thereby.

We are also of the opinion that the view taken in this case by the jury excludes any right on the part of the administrator of Antoinette Webber to the property in question. If it was the property of George W. Webber, it was not necessary that it should go through the hands of the administrator of Antoinette.

We find no error in what the court said regarding the long delay in filing this claim. George W. Webber lived some 10 years after the death of Antoinette, and no steps were taken during his life to obtain any part of this property; nor, so far as we can discover, was any claim made that she left any property. The court instructed the jury that, while the statute of limitations did not run against this claim, this delay was a circumstance which might be taken into consideration by them in determining the probabilities of the justness of the claimant's claim. For this purpose it was competent.

It becomes unnecessary to discuss the question of the rule of damages, or other assignments of error.

The order of the circuit court is affirmed.

MOORE, GRANT, and MONTGOMERY, JJ., concurred. LONG, J., did not sit.