McNELLY, Administratrix, Respondent, vs. MARSHALL, Administrator, Appellant.

*April 9—April 29, 1913.*

*Husband and wife: Gifts* inter vivos: *Certificates of deposit payable to wife: Evidence.*

In an action between the personal representatives of a husband and wife, both deceased, involving the ownership of certificates of deposit payable to the wife, the evidence (stated in the opinion), tending to show that she had possession of such certificates and that the money represented thereby might have been given to her by the husband, is *held* to sustain the finding of the trial court that the certificates were her separate property and belong to her estate.

APPEAL from a judgment of the circuit court for Richland county: GEORGE CLEMENTSON, Circuit Judge. *Affirmed.*

For the appellant there was a brief by *Bancroft & Johns,* and oral argument by *L. H. Bancroft.*

For the respondent there was a brief by *Burnham & Black,* and oral argument by *O. D. Black.*

TIMLIN, J. The findings of the circuit court are to the effect that Harvey and Samantha Marshall, he a widower with children, and she a widow with children, were married about thirty-five years ago, resided together up to the time

of her death upon a farm in Richland county belonging to Harvey, and accumulated considerable property and money. There was no issue of this marriage. She died intestate June 1, 1911, he died intestate January 12, 1912, and after her death there was found in her possession seven certificates of deposit on certain local banks, six of which were payable to Samantha and one to Harvey or Samantha Marshall. In this suit by her administratrix against his administrator the circuit court gave judgment in favor of the former and against the latter, entitling the former to the amount of these six certificates and half of the seventh, aggregating $3,705.

It is contended on this appeal that the *prima facie* case of ownership made by the written instrument is overcome by evidence (1) that at the time of marriage Samantha had no separate estate or property; (2) that the money represented by these certificates is the avails of farm products or live stock from the farm owned by Harvey; (3) that this money was by consent of Samantha assessed to Harvey; (4) that Harvey was quite illiterate and remained at home, while Samantha transacted most of the business and especially attended to the deposits in the banks and to the renewals of the certificates of deposit during the thirteen years covered by these deposits; she had made some of them in her name, some in the name of Harvey Marshall, and some of them in the name of Harvey or Samantha Marshall, but at last had renewed six of them in her name; (5) after her death Harvey went to the banks and desired to cash the certificates, where he was informed that the certificates were in Samantha's name; (6) that there is no evidence that Samantha made any claim to own these certificates during her life, nor did her heirs after her death until it was learned that they were in her name; (7) that the finding of the circuit court that she had possession of the certificates is not supported by evidence; (8) that Samantha said to one of the officers of one bank, sometime before the last renewal in her name, that she

wanted the deposits made so that either she or her husband could draw the money, and that her husband was not able to transact business and she did it for him; (9) hence a conclusion that she was acting as the agent of her husband in making the deposits originally and could not therefore make title to this money as against him or his heirs.

The case is a close one. The probative effect of a fact, like the ornamental effect of a jewel, is much affected by its setting. Therefore analysis is not always a reliable test. This is particularly noticeable in fraud cases, where each fact detached and alone might have a probative value equal to zero; but grouped and set as the facts actually occurred may convincingly establish fraud. It however applies in a greater or less degree to all evidence. Keeping this in mind the following analytical treatment will not mislead: (1), (2), (4), and (6) have little probative force. We could almost as well say that they indicate a reason for Harvey making a gift as to say that they negative a gift; (3) is not significant because the statute then in force (sec. 1044, Stats. 1898) provided that the money of the wife might be assessed to the husband. (6) This is weakened by the fact that there was no occasion calling for the assertion of any claim of ownership upon her part. (7) We find some evidence tending to support the conclusion that she had possession of the certificates. These certificates were kept with deeds, tax receipts, and other papers in a box at the home of the old couple, presumably accessible to both, but found after the death of Samantha by her daughter, and by the latter delivered to Harvey. (5) and (8) tend to disprove a gift; and (9) is an argumentative inference from the situation and circumstances which assumes the whole controversy in favor of defendant. On the other hand, in addition to the written instruments there is the fact that the moneys in question were the product of the joint industry and self-denial of both husband and wife exerted in the operation and management of

his farm; the fact that the marital relations were happy; that Harvey left an estate, exclusive of these certificates of deposit in question, of the value of $28,000; that he made no other provision for her, and of course did not know which would die first, and that the earliest certificate, which was issued on January 18, 1898, was issued to her. In this state the wife by statute may receive property by gift from her husband. Sec. 2342, Stats. What arrangement with regard to this money existed between husband and wife, both now deceased, can never be definitely ascertained. We are not to presume that she was guilty of fraud. Whether this was a gift *inter vivos* or a series of gifts of different amounts made when she deposited money in her name or when she renewed the certificates in her name which were formerly in the name of both, no one can now determine with any degree of certainty. No one can say whether Harvey knew that she had made the deposits or renewed the certificates of deposit in her name and acquiesced therein with the intention that she should own the money. Under such circumstances the written instruments, with the finding of the circuit court in their favor, are entitled to great weight, and we are not convinced that the judgment should be reversed for failure of proof. The following cases deal with somewhat similar situations: *Qualters's Estate,* 147 Pa. St. 124, 23 Atl. 348; *Cummings v. Friedman,* 65 Wis. 183, 26 N. W. 575; *Mains v. Webber's Estate,* 131 Mich. 213, 91 N. W. 172; *Crosetti's Estate,* 211 Pa. St. 490, 60 Atl. 1081.

*By the Court.*—Judgment affirmed.