THOMPSON et al. v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit.   February 13, 1919.)

No. 167.

1. LARCENY ☞32(2, 9)—INDICTMENT—NAME OF OWNER.
    At common law, an indictment for larceny must charge that the thing stolen was the property of the actual owner, or of a person having a special property as bailee, from whom it was stolen, except that ownership might be charged to persons unknown to the grand jurors.
2. LARCENY ☞32(2), 40(2)—INDICTMENT—OWNERSHIP IN UNITED STATES.
    In a prosecution under Criminal Code, § 47 (Comp. St. § 10214), penalizing stealing property of the United States, the indictment must charge, and evidence must show, that the property belonged to the United States.
3. CRIMINAL LAW ☞448(16)—EVIDENCE—CONCLUSION—OWNERSHIP.
    A witness' conclusion as to the ownership of property is admissible where only a question of fact is involved, but not when the ownership depends upon the legal effect of a transaction.
4. CRIMINAL LAW ☞448(16)—EVIDENCE—CONCLUSION OF LAW—OWNERSHIP.
    In a prosecution for stealing property of the United States, testimony that stolen sugar belonged to the United States, because it had been requisitioned under Act Aug. 10, 1917, § 10 (Comp. St. 1918, § 3115⅛ii), is inadmissible, because stating a conclusion of law.
5. CRIMINAL LAW ☞1169(9)—HARMLESS ERROR—EVIDENCE.
    Error in admitting witness' conclusion that the stolen property belonged ·to the United States, because it had been requisitioned by the government, is not reversible error, if he was correct in his conclusion.
6. LARCENY ☞7—OWNERSHIP OF PROPERTY—"PROPERTY OF UNITED STATES."
    Where the United States had requisitioned sugar as authorized by Act Aug. 10, 1917, § 10 (Comp. St. § 3115⅛ii), and the refiner had placed the specified quantity on a barge not under its control, the sugar became the "property of the United States," within Criminal Code, § 47 (Comp. St. § 10214), penalizing persons stealing property of the United States.
    [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Property of the United States.]
7. CRIMINAL LAW ☞1036(4)—APPEAL—RESERVING GROUNDS FOR REVIEW—EVIDENCE.
    The contention that requisition by the United States of certain sugar under Act Aug. 10, 1917, § 10 (Comp. St. 1918, § 3115⅛ii), had not been shown by the best evidence, cannot be made upon appeal, where not raised while testimony was being taken or during judge's charge.
8. CRIMINAL LAW ☞1043(1)—APPEAL—RESERVING GROUNDS FOR REVIEW—EVIDENCE.
    A request that a larceny indictment ·be dismissed for failure to show the stolen property belonged to the United States does not save the point that ownership was not established by competent evidence, where there is evidence in the record, either best or secondary, of ownership by the United States.

In Error to the District Court of the United States for the Eastern District of New York.

· Edward E. Thompson and Albert E. Ingracia were convicted of stealing property of the United States, and bring error.   Affirmed.
    Certiorari denied 249 U. S. ——, 39 Sup. Ct. 391, 63 L. Ed. ——.

The plaintiffs in error, who were defendants below, will be hereinafter referred to as defendants.   The defendants were indicted for

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

a violation of section 47 of the Criminal Code (Act March 4, 1909, c. 321, 35 Stat. 1097 [Comp. St. § 10214]), which is found in the margin.[1]

The indictment charged that defendants did on the 15th day of December, 1917, unlawfully take and carry away, with intent to steal, property of the United States, to wit, 15 bags each containing 100 pounds of granulated sugar.

The jury returned a verdict of guilty with a recommendation of mercy. The court thereupon imposed a sentence of two years' imprisonment, in the Atlanta penitentiary, on each defendant.

Alexander S. Drescher, of Brooklyn, N. Y. (Isadore Oshlag, of Brooklyn, N. Y., on the brief), for plaintiffs in error.

Melville J. France, U. S. Atty., of New York City (Charles J. Buchner, Sp. Asst. U. S. Atty., of Brooklyn, N. Y., of counsel), for the United States.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

ROGERS, Circuit Judge (after stating the facts as above). This case has been brought into this court upon the theory that the United States did not prove that the title to the property taken was in the United States as alleged in the indictment. What the act of Congress punishes is the stealing of the property of the United States, so that, unless the property at the time it was taken was in the United States, the conviction cannot be sustained, even though the property was feloniously taken.

The Criminal Code punishes "whoever shall * * * steal * * * property of the United States." Stealing and larceny, it is sometimes said, have the same meaning at common law. Satterfield v. Commonwealth, 105 Va. 867, 52 S. E. 979; State v. Richmond, 228 Mo. 362, 128 S. W. 744; State v. Fair, 35 Wash. 127, 76 Pac. 731, 102 Am. St. Rep. 897; Cohoe v. State, 79 Neb. 811, 113 N. W. 532; Flint v. Holman, 82 Vt. 297, 73 Atl. 585; Hughes v. Territory, 8 Okl. 28, 56 Pac. 708; Sullivan v. Territory, 8 Okl. 499, 58 Pac. 650. And see State v. Perry, 94 Ark. 215, 126 S. W. 717; Gardner v. State, 55 N. J. Law, 17, 26 Atl. 30. Bouvier states that the term "stealing" has nearly the same meaning as "larceny," but does not specify in what the difference consists. And in Commonwealth v. King, 202 Mass. 379, 88 N. E. 454, the court says that the word "steal" includes criminal taking or conversion by way either of larceny, embezzlement, or by obtaining by false pretenses.

While it is not necessary in the instant case to inquire into the exact difference which may exist between the word "steal" and the word "larceny," we may point out in passing that the word "steal," as used in acts of Congress, is not always synonymous with the word "larceny." For in reference to the provision of the Criminal Code (10 U. S. Compiled Statutes 1919 Ann. § 10364) it has been held un-

---

[1] "Sec. 47. Whoever shall embezzle, steal or purloin any money, property, record, voucher or valuable thing whatever, of the moneys, goods, chattels, records or property of the United States shall be fined not more than five thousand dollars, or imprisoned not more than five years, or both."

necessary that the indictment should allege the ownership and value of the property and that it was feloniously stolen, taken, and carried away. See Judge Brewer's decision in United States v. Falkenhainer (C. C.) 21 Fed. 624, 627. See, also, United States v. Trosper (D. C.) 127 Fed. 476. And in the indictment in the instant case the indictment does not allege, and it is not so much as suggested by the counsel for the defendants that it should have alleged, the value of the sugar which was stolen. In Dimmick v. United States, 135 Fed. 257, 70 C. C. A. 141, the Circuit Court of Appeals in the Ninth Circuit sustained an indictment under the same section of the Criminal Code as is herein involved. The indictment in that case charged defendant with stealing money "belonging to" the United States, and it was claimed that there was "no averment of ownership in the United States." The court overruled the objection saying that—.

"While every indictment for larceny must allege an ownership of the property stolen, and would be defective without such an allegation, there are no particular words or phrases which the law requires to be used."

The words "belonging to the United States" were regarded as equivalent to "the property of the United States" and hence sufficient.

[1, 2] It is elementary that, to constitute a good indictment for larceny, it is necessary at common law that the thing stolen should be charged to be the property of the actual owner, or of a person having a special property as bailee, and from whose possession it was stolen, although an indictment charging ownership in one to the grand jurors unknown is sufficient at common law. Joyce on Indictments, § 351 n. Such an indictment, however, could not be sustained, of course, if brought in a federal court under section 47 of the Criminal Code; that being the provision upon which the indictment in the instant case is based. It is vital, if the conviction in this case is to be sustained, that the indictment should charge and the evidence should show that the sugar was in fact the property of the United States. In the instant case, can the sugar be said to belong to the United States, or to be the property of the United States?

It appears that the sugar which the defendants were charged with having stolen were 15 bags of granulated sugar which had been taken from a cargo of 300 bags of sugar loaded on a barge lying at Pier No. 12 in the East River, in New York City. This sugar came from the Arbuckle Sugar Refinery in New York. The general manager of that establishment was asked whether the bags were the property of the United States, and whether he could tell whose sugar it was on December 15, 1917. He was allowed to answer over objection that it was the property of the United States, and exception was duly taken. He was asked on cross-examination how he knew the sugar belonged to the United States. And he replied:

"A. Because the government had requisitioned it. It was in our warehouse previously to that date, and the government had requisitioned it, and I have here, if you desire to see it, the requisition from Mr. Hoover for that particular lot of sugar, of which these 2 bags and the remaining 15 were a part.

"Q. How are you able to identify these 2 particular bags, or the 15 bags; how sure are you? A. When I went down to the station house, I looked at all the 15 bags, and took our code mark from them, and then went back to my office, and got the record out, and found that that was the particular sugar that belonged to the government.

"Q. What do you mean by code mark? A. That little mark on there shows when the sugar was made, on each bag.

"Q. And when the government requisitioned the sugar, you were able to tell that this sugar was in a particular lot that they requisitioned? A. Yes, sir; in the warehouse. That lot was all set aside, 89,600 bags, known by us as government sugar, that would be only on government orders. We considered it in handling as part of the government's and kept our records entirely separate for that. Now I checked up these bags in the station house with our records, and I found that these particular bags were a part of that government sugar."

[3] The ownership of property may be of so plain and uncontroverted an origin as to make it merely a matter of fact. When this is the case, the conclusion of a witness that A. is the owner of the property may be received in evidence. Bunke v. New York Telephone Co., 188 N. Y. 600, 81 N. E. 1161; Hunnicutt v. Higginbotham, 138 Ala. 472, 35 South. 469, 100 Am. St. Rep. 45; Perkins v. Sunset Telephone & Telegraph Co., 155 Cal. 712; [1] Union Hosiery Co. v. Hodgson, 72 N. H. 427, 57 Atl. 384. But the ownership of property may depend upon what a transaction means in terms of law, in which case it is evidently a matter for the judge, and in such a case the conclusion of the witness is not properly admissible. See Chamberlayne's Law of Evidence, vol. 3, § 2359; Wildman v. State, 139 Ala. 125, 35 South. 995; Hamilton v. Smith, 74 Conn. 374, 50 Atl. 884; Mains v. Webber's Estate, 131 Mich. 213, 91 N. W. 172.

Professor Wigmore, in his work on Evidence (volume 3, § 1960), says:

"If a witness, in the course of his testimony, comes to mention that A. 'possessed,' or B. 'owned,' or C. was 'agent,' let him not be made dumb under the law, and be compelled by evasions and circumlocutions to attain the simple object of expressing his natural thought. If there is a real dispute as to the net effect of the facts, these may be brought out in detail on cross-examination.

"The phrases of this class of chief occurrence are the following: Whether a person was in possession; whether a person was owner; whether there was a sale, or passing of title," etc.

[4, 5] In the instant case the witness who testified that the ownership of the sugar was in the United States, because the government had requisitioned it, stated a conclusion of law, which was not for him to determine. But the error committed in allowing him to express it is not to be regarded as reversible error, if the reason he gave for his conclusion appears justifiable as matter of law.

[6] Congress had passed Act Aug. 10, 1917, c. 53, 40 Stat. 276 (Comp. St. 1918, §§ 3115⅛e-3115⅛r), which was entitled "An act to provide further for the national security and defense by encouraging the production, conserving the supply, and controlling the distribution of food products and fuel." Section 10 of the act (section 3115⅛ii) provided in part as follows:

"The President is authorized, from time to time, to requisition foods, feeds, fuels, and other supplies necessary to the support of the army or the main-

[1] 103 Pac. 190.

tenance of the navy, or any other public use connected with the common defense, and to requisition, or otherwise provide, storage facilities for such supplies; and he shall ascertain and pay a just compensation therefor."

Under this act it is evident that payment did not have to precede or to be contemporaneous with the taking or requisitioning of the supplies; and when the requisition for a specific number of bags of granulated suger was served on the Arbuckle Bros., and the requisite number of bags of sugar of the quality called for was set aside in the refinery as the government's property to be held subject to its orders, and which was subsequently and in pursuance of the orders of the government withdrawn from the refinery, put on trucks and carted to Pier No. 12 in the East River to be there loaded on a barge to carry it to a vessel of the Metropolitan Line to be transported to designated parties in Boston it sufficiently shows title in the United States to support an indictment which charges that the sugar was the property of the United States. The fact that the United States had not yet paid for it and that no delivery into the possession of the United States had been made does not militate against this conclusion. When there is an unconditional contract for the sale of specific goods in a deliverable state, unless a different intention appears the property in the goods passes to the buyer when the contract is made, without payment of the price or delivery of the goods, notwithstanding that the buyer cannot take away the goods until the price is paid or tendered. The only difference between an unconditional requisition of the goods of the United States under this act and a sale lies in the fact that the government could take the goods before payment. And the law is well established that, although goods remain in the possession of the seller, yet there is such a delivery as will pass the property, even as against third persons, if they are segregated and set apart for the buyer. In re Pease Car, etc., Works (D. C.) 134 Fed. 919; Morse v. Sherman, 106 Mass. 430; Whitcomb v. Whitney, 24 Mich. 486; World Manuf. Co. v. Hamilton-Kenwood Cycle Co., 123 Mich. 680, 82 N. W. 528; Brewer v. Salisbury, 9 Barb. (N. Y.) 511.

In the instant case nothing remained for Arbuckle Bros. to do to pass the title to the United States. Not only had the identity, quantity, and quality of the sugar requisitioned been ascertained, and the sugar been segregated and set apart from the mass of sugar in the refinery and become known to those in charge there as sugar belonging to the United States, but it had been delivered by Arbuckle Bros. to barge No. 7, which was a carrier independent of it, and so had passed from their immediate control; and if the title had so far passed from Arbuckle Bros. that, if they had attempted to sell it to a third person while it was on barge No. 7, no title would have passed to the latter under the authorities, then it is perfectly clear that the property belonged to the United States, so that third persons, who attempted to steal instead of to buy it, cannot escape punishment upon the claim that the ownership was not in the United States as alleged in the indictment.

[7, 8] But it is said that it was insufficiently proved that the United States had requisitioned the sugar; that the proof presented was

incompetent, and that some official connected with the Food Administrator's office should have been called to establish the fact. We do not need to consider this objection, now made for the first time; the defendants not having challenged at the trial the authenticity of the requisition order from Mr. Hoover, which the general manager of the Arbuckle Sugar Refinery said had been received and acted upon, and which he stated he had with him in court, but which defendant's counsel were not sufficiently interested in to look at. No suggestion was made while testimony was being taken, or after the taking of the testimony closed, and at the time of the charge, that the fact of the government's requisition had not been shown by the best evidence or sufficiently proved. The court's attention not having been specifically called to the matter at the time of his charge to the jury, it cannot now be considered. A request that the indictment be dismissed on the ground that it had not been shown that the sugar was the property of the United States is not sufficient to enable counsel now to say that that fact was not made out by competent evidence, when there is evidence in the record, whether the best or not, that there was a requisition.

Judgment affirmed.