### DONEGAN v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. December 11, 1922.)

No. 93.

1. **Larceny ⬳28(1)—Indictment for carrying away letters of the United States official need not allege official had duty to reply to them.**

    In an indictment under Criminal Code, § 46 (Comp. St. § 10213), for feloniously carrying away from the office of a federal prohibition director letters and telegrams addressed to such director, it is not necessary to allege that it was his duty to reply to the letters and telegrams.

2. **Larceny ⬳6, 31—Value not an element of larceny of property of United States, and need not be alleged.**

    Under Criminal Code, § 46 (Comp. St. § 10213), making it an offense to feloniously take and carry away "any kind or description of personal property belonging to the United States," the value of the property is not an element of the offense, and need not be alleged in an indictment.

3. **Larceny ⬳64(1)—Possession of recently stolen property presumptive evidence of guilt.**

    Possession of stolen property, standing alone, does not establish guilt, but possession of property recently stolen raises a presumption of guilt, which, in the absence of explanation, may authorize a jury to infer a criminal connection with its acquisition.

4. **Larceny ⬳55—Evidence held to sustain conviction of separate offenses.**

    Where defendant was charged in each count with larceny from the office of a federal prohibition director of a particular letter or telegram therein described, but a number of the offenses were laid on the same day, evidence that the several letters and telegrams were received at different hours, and that it was essential to the carrying out of the unlawful scheme in which they were to be used by defendant that they should not be seen by the director or his representatives, *held* to sustain a conviction on each count, under an instruction that each letter or telegram must have been taken separately from the others to authorize a separate conviction for its larceny.

---

⬳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
287 F.—41

5. Larceny ⬅55—Evidence held insufficient for conviction.

    A charge of larceny of a telegram from the office of a federal prohibition director, which telegram, addressed to the director, was found in defendant's possession, *held* not sustained, where there was no evidence of the sending of such telegram.

6. Criminal law ⬅877—Acquittal of one defendant not inconsistent with conviction of another.

    Where two defendants were charged with conspiracy with others, to the grand jury unknown, to commit an offense, and the evidence sustained the allegation that others were engaged in the conspiracy, the acquittal of one defendant charged is not inconsistent with conviction of the other.

7. Criminal law ⬅877—Acquittal of one of two defendants held not to require acquittal of both.

    Where defendant, charged with another with larceny of letters and telegrams, was found in possession of the stolen property, the acquittal of his codefendant, claimed by the prosecution to have personally committed the larceny as his accomplice, *held* not inconsistent with his conviction.

8. Criminal law ⬅395—Incriminating evidence found on person arrested held admissible against him.

    Stolen letters and telegrams found on the person of defendant when he was arrested, on probable cause, in the room of another person, for conspiracy to violate the Prohibition Act, and which were instruments used in carrying out the conspiracy, *held* admissible in evidence against him on the charge of conspiracy, and also on the charge of larceny of the letters and telegrams.

In Error to the District Court of the United States for the Southern District of New York.

Edward J. Donegan was convicted on twelve counts of an indictment for a violation of section 46 of the United States Criminal Code (Comp. St. § 10213) and section 37 of the United States Criminal Code (Comp. St. § 10201). From the judgment of conviction, defendant brings error. Affirmed.

Elijah N. Zoline, of New York City (John W. Davis, of New York City, of counsel), for plaintiff in error.

William Hayward, U. S. Atty., of New York City (David V. Cahill, Sp. Asst. U. S. Atty., of New York City, of counsel), for the United States.

Before HOUGH, MANTON, and MAYER, Circuit Judges.

MANTON, Circuit Judge. Plaintiff in error, with one Regina Sassone, was indicted on twelve counts for unlawfully and willfully taking and carrying away from the office of the federal prohibition director of New York City, with intent to convert to his own use, certain personal property, in violation of section 46 of the United States Criminal Code. This section reads that, whoever shall rob another of any kind or description of personal property of the United States, or shall feloniously take and carry away the same, shall be guilty of crime.

The first count charges the taking and carrying away on December 29, 1920, with intent to convert to their own use, a telegram dated December 29, 1920, addressed to Charles R. O'Connor, prohibition director, and sent by Gwynnbrook Distilling Company. The second count is for the taking on December 29, 1920, of a telegram dated December 29, 1920, sent by the Stewart Distilling Company. The third count is for the

taking on December 29, 1920, of a telegram dated December 29, 1920, sent by the Industrial Grain Products Corporation. The fourth count is for the taking on December 27, 1920, of a telegram dated December 27, 1920, sent by R. L. Buse Company. The fifth count is for the taking on December 29, 1920, of a telegram dated December 29, 1920, sent by R. L. Buse Company. The sixth count is for the taking on December 24, 1920, of a telegram dated December 24, 1920, sent by the New York & Kentucky Company. The seventh count is for the taking on December 23, 1920, of a telegram dated December 23, 1920, sent by the Jas Clar Distilling Company. The eighth count is for the taking on December 23, 1920, of a telegram dated December 23, 1920, sent by the Freiberg & Workum Company. The ninth count is for the taking on December 24, 1920, of a letter dated December 24, 1920, sent by the Hamburger Distillery. The tenth count is for the taking on December 24, 1920, of a letter dated December 24, 1920, sent by the Economy Distilling Company. The eleventh count is for the taking on October 28, 1920, of a letter dated October 28, 1920, sent by the Quincy Market Cold Storage & Warehouse Company. The twelfth count is for the taking on December 24, 1920, of a letter dated December 24, 1920, sent by the Freiberg & Workum Company.

In a thirteenth count they are charged with having unlawfully combined, federated, and agreed together, and with divers other persons whose names are to the grand jurors unknown, to violate the National Prohibition Act (41 Stat. 305). This count alleges that it was part of the conspiracy that the defendants procure the issuance to the persons with whom they had conspired of basic permits to deal as wholesale dealers in intoxicating liquors, and should procure the making and issuance, in the name of the federal prohibition director for the state of New York, of permits for the withdrawal and sale of intoxicating liquors without authorization from or consent of the federal prohibition director or any person or official authorized and empowered to give such authorization or consent; and as a further part of such conspiracy it is alleged that such persons should procure and cause the name of Charles R. O'Connor, who was the federal prohibition director of the state of New York, and that of John Connor, who was an assistant, and authorized and empowered in proper cases to sign and issue permits for the sale of intoxicating liquors, to be forged upon papers purporting to be such permits; further, that the defendants should cause the permits, with the names forged thereon, to be presented to distilleries and wholesale dealers in intoxicating liquors, and should procure by means of such papers the delivery to themselves and to the said other persons of large quantities of intoxicating liquors without the permits prescribed by law; and, further, that the defendants should procure the issuance of such papers purporting to be permits in the names of various persons who held permits to deal in intoxicating liquors without the knowledge or consent of such persons; and, further, that the defendants should obtain telegrams from various distilleries and wholesale liquor dealers inquiring about the genuineness of permits for the withdrawal of intoxicating liquors which would be presented to such distilleries and wholesale liquor dealers, and should

deliver the same to the defendant Donegan and to said other persons, and that the defendant should reply to such telegrams in the names of the federal prohibition directors to whom such telegrams should be addressed, and should assure the distilleries and wholesale liquor deal-ers that such permits were genuine and lawfully issued, whereas, in fact, they would be false, forged and fraudulently issued; and, further, that the telegrams should be taken and carried away by the defendants after they had been received at the office of the federal prohibition director for the state of New York, and should be retained and kept by the defendants, and that as part of such conspiracy that by means of such false, fraudulent, and forged permits, and the possession of such telegrams, and the sending of the aforesaid replies thereto the defendants should procure the delivery to themselves, and to the said various other persons of large quantities of intoxicating liquors without the permits prescribed by law, and should sell and deal in intoxicating liquors without obtaining lawful permits so to do—all of which, it is alleged, was a violation of section 37 of the United States Criminal Code.

After a trial, Sassone was acquitted and the plaintiff in error was convicted.

In support of these charges, the government proved that the plaintiff in error and Mary Parkins were arrested in the latter's room at the Hotel McAlpin on December 29, 1920. Mrs. Parkins was an employee of the government in the office of the federal prohibition director in New York City. The codefendant, Sassone, was also an employee of the government in that office. They both lived at the Hotel McAlpin at the time, occupying adjoining and connecting rooms. The codefendant was registered as Mrs. Lynch, and the plaintiff in error as Mr. Lynch. He was also known as Joyce, and his codefendant was known as Mrs. Joyce. The plaintiff in error never had a permit to deal in liquor. A federal prohibition agent, engaged in the work of detection of this crime during December, 1920, met Mrs. Parkins and later the plaintiff in error. He discussed various liquor transactions with them and the plaintiff in error stated that he would furnish withdrawal papers to the agent for 125 barrels of liquor; that the papers wouldn't be genuine, but that they would get through. He would charge $100 per barrel, and would guarantee the liquor out of the distillery, but not to destination. He showed the agent some papers that were in the form of withdrawal permits and with the name of the federal prohibition director, Charles R. O'Connor, stamped thereon, and the name of the director's assistant, John Connor, in handwriting. He took these papers from his pocket and remarked:

"We fix them up so that they look genuine and will go through all right."

He told the agent that he had men at various distilleries throughout the country looking after his interests and that there was considerable money in this business, and that on that day he had left home with $20 and that he then had $30,000, and he showed the agent a big roll of money. The codefendant, Sassone, took no part in this conversation. The agent reported these facts to his superiors before the arrest. Mrs. Parkins testified for the government that the plaintiff in error paid

her for introductions to people for whom he was able to get liquor, and that she introduced him to one Gorman, for whom he was to get 50 barrels. For this introduction, Mrs. Parkins was paid $1,000 by the plaintiff in error. When the defendants were arrested, they were together in Mrs. Parkins' room. Plaintiff in error was searched, and a number of telegrams and letters from various distilleries addressed to the federal prohibition director, inquiring about the genuineness of permits for the sale of liquors which the distilleries had received, as well as copies of what purported to be answers in the name of the director to such inquiries, were found in his clothing. Among the letters and telegrams were the 12 which are the subject-matter of the counts of the indictment. Some letters and telegrams purporting to be signed by O'Connor proved to be forgeries.

The distillers testified, except the one referred to in the third count, stating that the telegrams and letters were sent by them in the ordinary course. Papers were found upon the bed in Mrs. Parkins' room, but these were not made the subject of the counts in the indictment. The plaintiff in error at the time of his arrest attempted to bribe the government officers, offering various sums in cash for his release and "for fixing the matter up." His codefendant, Sassone, made a written statement to the government agents who arrested her, in which she stated that the plaintiff in error paid her to steal the telegrams and letters from the director's office and give them to him. She explained that, when a telegram came to her as file clerk in the director's office, inquiring as to the genuineness of a permit, if there was no record of such a permit having been issued by the director, she would turn the telegram over to the plaintiff in error. She gave the plaintiff in error about 50 telegrams and also a list of authorized withdrawals of liquor by licensed dealers and received $3,000. Her statement was received in evidence as against her only.

In submitting the case to the jury, the court properly instructed them that if the government satisfied them beyond a reasonable doubt that telegrams and letters were intercepted by an accomplice, or one who aided and abetted him in the commission of that act, and that he, knowing that they were taken from the federal director's office, aided them, or encouraged them, or asked them to do so, and then received them knowing that they were taken from the director's office, that he would be just as guilty as if he had gone up into the office and taken them himself, because under these circumstances, he would be an aider or abetter, and that the federal law made no distinction between principals and accessories, and that they were all principals under the federal statute. And the court, in response to the request of counsel for the plaintiff in error, emphasized in his charge the requirement of proof that as to the first 12 counts they must be satisfied beyond a reasonable doubt "that there was a separate, individual, particular taking in each case," and the court further charged:

"On that point I may say that there are four counts charging a larceny on the 29th of December. There are four counts charging a larceny of papers and telegrams on the 24th. There is one count charging larceny on the 23d, making five separate days on which these counts are covered. If you should find, gentlemen, that the four telegrams or letters alleged to have been taken

and stolen on the 29th were taken at one time, then you are going to find the defendants guilty on one of those counts on the 29th of the month. If you should find that the four telegrams or letters alleged to have been taken on the 24th, covering four counts, were all taken at one time, you will find him guilty only on one count, that is, if they were all taken at one time. So on the 23d there are two counts charging that larcenies occurred on the 23d.

"If you should find that both those telegrams or letters were taken at one time, that would constitute only one larceny. You would find him guilty on that one count. So, if you should conclude that there was only one taking on the 28th, one taking on the 23d, one taking on the 29th, one on the 27th, and one on the 24th, all you really could do at the most would be to find the defendants guilty on the larceny charged on 5 counts and not 12."

[1, 2] Thus the rule of law for the jury's guidance was established that there must be evidence to warrant finding the plaintiff in error guilty of a separate taking of each communication as set forth in each of the 12 counts of the indictment. Was there sufficient to warrant submitting the evidence to the jury of the question of the guilt of the plaintiff in error under this rule of law? The indictment in each of the 12 counts sets forth a crime. There is alleged an unlawful taking and carrying away of personal property of the United States—a telegram or a letter—describing it, with intent to convert that property to their own use. The letter or telegram is set forth in full. The person to whom it was sent is a public official. It was not necessary to allege that it was the duty of the prohibition director to make a reply to such communication. Thompson v. United States, 256 Fed. 617, 167 C. C. A. 646; Dimmick v. United States, 135 Fed. 257. The statute does not make the offense depend upon value. In that sense it differs from many state statutes declaring an unlawful taking and conversion of property to be larceny. The words of the statute permit a charge to be made for the taking of any personal property no matter what may be its value. As to this statute, the Supreme Court, in Jolly v. United States, 170 U. S. 402, 18 Sup. Ct. 624, 42 L. Ed. 1085, said:

"The language used in the statute is much broader and covers more ground than the common-law definition of larceny, and it is also more comprehensive than the statute of 1790. Act of April 30, 1790, c. 9, 1 Stat. 112, 116. 'Any kind or description of personal property' is an exceedingly broad designation."

It was held there that the allegation in the indictment setting forth the value of the property taken was not necessary.

At the time of the defendants' arrest, each of the telegrams and letters alleged in the indictment as having been stolen were found in the possession of the plaintiff in error. The first 8 were telegrams addressed to the federal prohibition director, and the other 4 were letters addressed to him. They all relate to permits for the withdrawal of liquor. He was officially authorized to issue such permits. They were inquiries from distilleries inquiring as to the genuineness of papers which purported to be permits. After a permit was received by a distiller, as a precaution, he made it a rule to make inquiry before selling any liquor on the permit. When such a communication was received, it was kept in the official and confidential files of the prohibition director. The rule of the office forbade even employees taking them out of the office. Such was the nature of the papers taken by the plaintiff in error's confederates, and found in his possession and in his clothing

and in the room at the Hotel McAlpin in New York City. This room was Mrs. Parkins', his confederate in the crime and a clerk of the office of the prohibition director. In an adjoining room he lived with his codefendant under an assumed name; she, too, being a clerk employed in the director's office.

[3, 4] The possession of stolen property, standing alone, does not establish guilt, but the possession of property recently stolen raises a presumption of guilt which, in the absence of explanation, may authorize a jury to infer a criminal connection with its acquisition. Wilson v. United States, 162 U. S. 613, 16 Sup. Ct. 895, 40 L. Ed. 1090; Boehm v. United States (C. C. A.) 271 Fed. 454; Rosen v. United States (C. C. A.) 271 Fed. 651; People v. Weldon, 111 N. Y. 576, 19 N. E. 279. The evidence was overwhelming that the plaintiff in error was obtaining liquor in large quantities out of distilleries on papers that purported to be withdrawal permits and which were not genuine. All the senders of the telegrams and letters, except the Industrial Grain Products Corporation, referred to in count third, testified, stating the time, place, and manner of sending each communication. They each followed the usual or customary method in so doing. The telegrams were received at the branch office of the telegraph company, No. 1144 Broadway, and the director's office was at No. 49 West Twenty-Seventh street, near by. Exhibits 95, 96, and 96a were telegrams of confirmation of the permits sent from the Hotel McAlpin. These telegrams of confirmation were taken from the overcoat of the plaintiff in error when arrested. There were also taken from his overcoat Exhibits 8a and 9a, which purported to be telegrams confirming as genuine permits to distilleries. This indicated knowledge of the theft and carried a strong presumption of his part in such thefts. It was necessary for his success in these operations that the telegrams and letters be abstracted from the office immediately upon receipt. His accomplices were constantly on watch for them. One received $100 per communication for her vigilance. They had access to the office and its files. Delay in stealing involved the danger to them that some one else would see the message of inquiry and answer it. The nature of the taking permitted of no record of the receipt of the papers.

[5] It was a reasonable presumption for the jury to assume that the papers were taken as received. Opportunity, ease, and comparative safety were always with these aiders and abetters to accomplish their purposes, but time was of the essence. To avoid danger of discovery, the communication could not remain in the file even for a day, but must be abstracted as soon as received or at least as soon as discovered by the two unfaithful clerks. Donegan had no connection with the office of the prohibition director. He did not testify, nor did he attempt to explain his possession of these communications. His statements to the officers when arrested involved him in a violation of law that indicated the need of the stolen papers to carry out the object of his scheme. The offense charged in the first, second, third, and fifth counts are alleged to have been committed on December 29, 1920. These were telegrams sent on that day. The telegram of the fourth count was dated December 27, 1920. The telegram of the sixth count and the letters of the ninth and tenth counts were dated December 24, 1920. The

seventh and eighth counts were telegrams of December 23, 1920. Each were sent from a different part of the country by different senders and at different hours. Each referred to a different permit and was for a separate and distinct transaction. Even the telegrams of the fourth and fifth counts, although sent by the same man, were sent on different days and relate to different transactions. The marks on the telegrams show they were sent at different hours. This evidence, with inferences lawfully to be drawn, required the submission of the guilt of the plaintiff in error to the jury as to each one of these counts, with the exception of the third. The government did not call any witness to give testimony as to the sending of the telegram, the subject of the third count. In the absence of such proof, we think the court should have held the evidence insufficient to present a jury question as to guilt and should have directed a verdict of not guilty on that count.

[6] The thirteenth count refers to other persons as conspirators, to the grand jury unknown. The proof was ample to justify the conclusion of the jury that plaintiff in error did conspire to violate the law of the United States, and in furtherance of such conspiracy, committed, not one, but all of the overt acts alleged in the indictment. The fanciful criticism aimed at this count of the indictment, that further detail should have been alleged as to the means by which the violation of law was to be accomplished, needs no further answer except to say that the plaintiff in error met with temporary success in his unlawful purposes to violate the Act of October 28, 1919, in doing the very things charged in the indictment. But it is contended that the acquittal of his codefendant Sassone necessarily required the acquittal of the plaintiff in error. As to the conspiracy charged, the indictment alleged that the two conspired with persons whose names were unknown to the grand jury. There is proof that the persons unnamed entered into the conspiracy. Plaintiff in error said to Stevenson, the government agent, while the latter was engaged in detecting his crime, that he had representatives in the vicinity of each distillery from which he procured liquor to be withdrawn. They were never identified and in the presence of this agent the plaintiff in error gave an order to one Gorman for 50 barrels of liquor. He said he guaranteed the safe withdrawal of the liquor from the distilleries; that he had aid of others in this accomplishment indicated unknown conspirators. Mrs. Parkins' testimony at the trial was sufficient to satisfy the jury that she was a coconspirator and apparently her name was unknown to the grand jury. The extensive scheme of the plaintiff in error required more than the co-operation of his codefendant. The more hazardous part of his scheme, the transportation of the liquor itself, he assigned or gave to others who have escaped identification. His codefendant was used merely as a tool to obtain the correspondence. She was used for but a part of the scheme. The case is different from that where only two persons are named in the indictment as conspirators. In such case, the verdict of not guilty must involve both, for it requires more than one to unlawfully conspire. Feder v. United States, 257 Fed. 694, 168 C. C. A. 644, 5 A. L. R. 370; Browne v. United States, 145 Fed. 1, 76 C. C. A. 31.

[7] It is argued that the plaintiff in error cannot be found guilty of a violation of section 46 of the Criminal Code because of the acquittal

of Sassone. This defendant confessed her theft of telegrams and letters and such evidence was received as against her only. Her acquittal did not establish, as a fact, either that the telegrams and letters were not stolen or that the plaintiff in error was innocent. His possession and use of the stolen property, the nature of his unlawful business, his other avenues of assistance and Mrs. Parkins' aid as an accomplice, was sufficient. The jury had it within its power to say plaintiff in error employed some other instrumentality. Learned counsel at the trial argued as a defense that Mrs. Parkins was the person who took the papers from the office. The verdict of the jury is not inconsistent in having acquitted the codefendant and having convicted the plaintiff in error, and will therefore stand unless other errors be observed in the record. Kelly v. United States, 258 Fed. 392, 169 C. C. A. 408; Rooney v. United States, 203 Fed. 928, 122 C. C. A. 230.

[8] Error is assigned in the reception in evidence of the letters and telegrams taken from this plaintiff in error at the time of his arrest. It is said that the search for and the seizure of the stolen letters violated the plaintiff in error's constitutional protection. A motion for the return of these papers was denied. They were taken from the plaintiff in error in Mrs. Parkins' room and from his inner and over coat. The papers found in this other person's room had no sanctity of protection by reason of anything in the Constitution. The papers seized were instruments of the crime of conspiracy to violate the National Prohibition Act and likewise an instrument of the crime set forth in the first 12 counts of the indictment. Welsh v. United States (C. C. A.) 267 Fed. 819. Probable cause existed warranting the arrest of the plaintiff in error. The government's agent for the purpose of detecting his crime, had been associating with Mrs. Parkins who lived in the room adjoining and near that of the plaintiff in error, from October to December 29, 1920. He had collected sufficient from the lips of the plaintiff in error and his conduct and actions to satisfy any reasonable person of the scheme to violate the National Prohibition Act and defraud the United States by the use of its officer's name on fraudulent and forged withdrawal permits. For 18 days before the arrest, he was witness to all that plaintiff in error was doing. It was no mere suspicion that prompted the arrest, but first-hand knowledge of a criminal conspiracy. All of this was reported to the government officials. While he did not have knowledge of the stolen telegrams and letters, still these were taken when the arrest for conspiracy occurred. Seizure of such papers and using them for evidence after taking them from his overcoat and inner coat, does not violate either the Fourth or Fifth Amendment of the Constitution. Weeks v. United States, 232 U. S. 383, 34 Sup. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177; Amos v. United States, 255 U. S. 313, 41 Sup. Ct. 266, 65 L. Ed. 654.

Error is assigned as to the testimony of government officers tending to show a statement made by one Rosenfeld of the offer of bribery to release the plaintiff in error. Such testimony was excluded, when it was admitted by trial counsel for the government that the bribe was offered in the absence of the plaintiff in error. There was much testimony, which remained uncontradicted, that the plaintiff in error en-

deavored to secure his own release by offering bribes to the officers at the time of his arrest. The court cautioned the jury that the plaintiff in error was not on trial for bribery. Even though there may have been some question as to whether or not the conspiracy had ended at this time by the arrest, still what was said was in the presence of the plaintiff in error and he could not be prejudiced thereby.

Evidence as to the large sums of money deposited in the banks and safe deposit boxes was offered; also testimony of an employee of a surety company as to the amount of cash taken from the hotel box at the time of arrest. Much of this not only was admitted without objection, but was proved by the plaintiff in error's own counsel on cross-examination. The plaintiff in error was a man without other occupation than trafficking in liquor, and told of the large sums of money coming to him in cash. Deposits made corroborated the government agent's testimony and showed such large deposits, both by check and cash. The testimony as to taking money from the hotel box corroborated the officer's testimony that at the time of his arrest he had $39,000 and placed it in the hotel box. The evidence of guilt, aside from that challenged, is overwhelming. It was wholly that of the prosecution, and no denial or explanation of it is made in defense. Williams v. United States (C. C. A.) 265 Fed. 625.

We find no exception was taken at the trial to much of the court's charge that is now criticized. The court said:

"The government argues to you that he made his money that way, that that is the only way he did have to make money, and that he used this little woman, and the woman Parkins to be his runners, and paid her the pitiful sum of $100 a telegram, when he was making probably $10,000; that the facts and circumstances in the case show that he is that kind of a man; that he took a young girl, for whom pity is sought here, and debauched her, ruined her, violated her virtue, lived with her in a hotel under an assumed name, and that he was using her to bring telegrams to him, and using the Parkins woman to go out and get prospective buyers. * * *"

There was no evidence that the plaintiff in error debauched this co-defendant, but there was evidence of their life together as Mr. and Mrs. Lynch at the hotel, and this reference could not, within any reasonable or fair estimate, have prejudiced this plaintiff in error.

We think the rule of law as to conspiracy was correctly charged, and the exception is without merit. Hyde v. United States, 225 U. S. 347, 32 Sup. Ct. 793, 56 L. Ed. 1114, Ann. Cas. 1914A, 614. The marshaling of the testimony by the court was neither improper nor unfair. He directed the jury to go uninfluenced by any thought of his opinion, and to be guided by the testimony as they heard and viewed it, leaving them to judge the credibility of the witnesses and determine the guilt or innocence of the accused.

We think the judgment pronouncing guilt must be affirmed as to all the counts in the indictment, except the third count.

Judgment is affirmed as to the first, second, fourth, fifth, sixth, seventh, eighth, ninth, tenth, eleventh, twelfth, and thirteenth counts, and reversed as to the third count. The District Court is directed to enter judgment accordingly.