## MILLER v. UNITED STATES.[*]

(Circuit Court of Appeals. Seventh Circuit. January 6, 1925. Rehearing Denied March 3, 1925.)

No. 3442.

1. **Criminal law** ⟫1186(4)—**Defect in indictment held not ground for reversal.**

That an indictment for conspiracy through the use of one word instead of another failed to legally charge a conspiracy, when the point was raised for the first time in the appellate court, *held* not ground for reversal, under Rev. St. § 1025 (Comp. St. § 1691).

2. **Conspiracy** ⟫43(5)—**Commission of offense which was purpose of conspiracy may be charged as overt act.**

Commission of the offense which was the alleged purpose of the conspiracy may be

*Certiorari denied 45 S. Ct. 511, 69 L. Ed. ——.

charged as the overt act in an indictment for the conspiracy.

**3. Indictment and information ⊂⇒128—Counts in indictment held to charge but one conspiracy.**

Separate counts in an indictment for conspiracy, one charging a conspiracy to unlawfully remove spirits from a bonded warehouse, and the other the unlawful transportation of spirits from a bonded warehouse, both based on the same transaction, *held* to charge but a single conspiracy.

**4. Internal revenue ⊂⇒2—Statute held retained in force by Supplemental Prohibition Act.**

Rev. St. § 3296 (Comp. St. § 6038), making it an offense to remove spirits from a bonded warehouse otherwise than as provided by law, was continued in force by Supplemental Prohibition Act Nov. 23, 1921, § 5 (Comp. St. Ann. Supp. 1923, § 10138⅘c).

**5. Criminal law ⊂⇒1028—Review limited to questions arising in trial court.**

The appellate court, on a writ of error, can consider only questions which arose in the trial court, which are presented by the record and covered by assignments of error.

**6. Criminal law ⊂⇒1169(1)—Admission of immaterial evidence held not prejudicial error.**

Admission of immaterial evidence *held* not ground for reversal.

**7. Criminal law ⊂⇒1208(2)—Sentence, within statutory limits, is discretionary with trial judge.**

That the trial judge, before imposing sentence, made inquiry of defendant as to matters of which he had been informed since the trial, *held* not to affect the legality of the sentence, which was within the statutory limits.

**8. Criminal law ⊂⇒1166½(12)—Remarks of judge after sentence held not prejudicial.**

Remarks of the judge after imposing sentence *held* not legally prejudicial to defendant.

In Error to the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Criminal prosecution by the United States against Frank Miller. Judgment of conviction, and defendant brings error. Modified and affirmed.

Plaintiff in error Miller was tried and convicted under two indictments, consolidated by agreement for trial. Indictment No. 9389 has two counts, each undertaking to charge him and others with conspiring to commit an offense against the United States, and No. 9390 four counts, charging him respectively with (1) unlawfully removing non-tax paid alcohol from a government warehouse; (2) aiding and abetting others in such removal; (3) transporting without permit distilled spirits through the city of Chicago; and (4) breaking open the lock of a bonded wareroom of a distillery warehouse. He was convicted on all counts of both indictments, except the fourth of No. 9390, whereof he was acquitted, and was sentenced to imprisonment for two years and $10,000 fine on first conspiracy count, and two years and $5,000 fine on second conspiracy count, to three years and $5,000 fine on counts 1 and 2 of the other indictment, and $500 fine on count 3; the terms of imprisonment to be served consecutively.

The facts shown by the record are, briefly and substantially, as follows: The United States Industrial Alcohol Company had an industrial alcohol warehouse at Chicago, from which it made deliveries of alcohol. There was the usual bonded wareroom, wherein non-tax paid spirits were kept, which was kept locked, and of which the government officials alone had the key, and a free room, where was kept spirits upon which the tax had been paid. On the forenoon of February 23, 1922, the company's automobile truck, with its chauffeur and a guard, arriving at the company's plant, saw strange men thereabout, several of whom, with guns, ordered them from the truck, and to go inside and help roll out barrels of alcohol and put them on a strange truck, which was at the loading platform. The company's truck was then backed up to another platform there, and under duress its chauffeur and guard assisted in loading it. Miller was there taking part, apparently exercising some direction over the others. While the company's truck was being loaded, he evidently became alarmed, and before this truck was fully loaded compelled the chauffeur to get on the seat. Miller, getting on with him, ordered him to drive away, which he did as directed, in a circuitous course over streets of Chicago. But, alarm having been spread, the truck was traced by its tracks in the snow, and a squad of police took it, with its occupants and load of alcohol, to the police station. Miller was found to be armed. The spirits taken on this truck were pure alcohol, on which the tax had been paid. The other truck was successfully driven away with about 3,000 proof gallons of non-tax paid pure alcohol thereon, which had been taken by this gang from the bonded warehouse of the plant; some of them having broken the lock and opened the door. The government's evidence establishing these facts was wholly undisputed.

Joseph B. Fleming, of Chicago, Ill., for plaintiff in error.

Leo Klein, Asst. U. S. Atty., of Chicago, Ill.

Before ALSCHULER, EVANS, and PAGE, Circuit Judges.

ALSCHULER, Circuit Judge (after stating the facts as above). [1] Indictment No. 9389 is vigorously assailed on several grounds: First, that neither count states a conspiracy. The first charges that Miller and other persons unknown conspired together "to commit an offense against the United States; that is to say, the said Frank Miller did unlawfully and knowingly transport and cause to be transported from an industrial alcohol plant and bonded warehouse, to wit, United States Industrial Alcohol Company, situated at Chicago aforesaid, certain distilled spirits, to wit, alcohol, without complying with the regulations so to do." Count 2 charged the conspiracy to be "to commit an offense against the United States; that is to say, the said defendants, and more particularly the said Frank Miller, did unlawfully and knowingly aid and abet in the removal from a government bonded warehouse of distilled spirits, to wit, alcohol, on which the tax had not been paid, to a place other than the distillery warehouse provided by law."

Manifestly, conspiracy, if charged at all, was "lamely and unfashionably" done. It would seem that the verb "did," after Miller's name, fails so utterly to indicate the preceding allegation of a future purpose or plan of the alleged conspirators as quite irresistibly to suggest it was inadvertently employed in place of some other word, which would truly indicate a scheme or undertaking to be carried out in the future, which would be of the very essence of a conspiracy. The conclusion is much strengthened when it is considered that the substitution of a single word would make the counts unobjectionable as charging a conspiracy. This would have been effected by the word "should" or "would" in place of "did." That this indictment did not for any such defect fail to inform the defendant of the true nature of the charge of conspiracy against him is persuasively apparent from the fact that no motion was made to quash it, or demurrer interposed, or particulars of the charge demanded, and the infirmity does not appear to have been in any manner suggested until pointed out in this court. The use of the word "did" was no doubt an error in grammar, or a mere typographical blunder, wherefrom Miller does not appear to have been prejudiced, and in this respect we believe the case falls fairly within section 1025 of the Revised Statutes (Comp. St. § 1691): "No indictment found and presented by a grand jury * * * shall be deemed insufficient nor shall the trial, judgment, or other proceeding thereon be affected by reason of any defect or imperfection in matter of form only, which shall not tend to the prejudice of the defendant."

[2] It is further urged that the overt act charged in each count amounts to a charge of the doing of that which is alleged to be the object of the conspiracy. A number of authorities are cited for plaintiff in error which do not bear out this particular contention. We can see no logical reason why the overt act may not be charged to be one which was the purpose of the conspiracy. If A., B., and C. conspire together to have A. rob the mail, would it be any less a punishable conspiracy under the federal law, if the only move made to effect it were the very act of the robbery? It could not reasonably be contended that, instead of charging the robbery itself as the overt act, some divisional part of that act should be charged, such as procuring a gun, or walking to the place of the robbery, or the like, the proof of which might be difficult, and even impossible, but all of which were but steps in the robbery itself, the charging of which as the overt act would include all of the elements entered into it.

[3] It is contended that the two counts are for the same offense, and that in any event the evidence does not warrant separate cumulative penalties under these counts. That there was a conspiracy between Miller and others to steal or aid in stealing and removing from the warehouse this large quantity of alcohol, there is, under the record, no shadow of doubt. Stealing the alcohol naturally involved the seizing of it where it was and transporting it elsewhere. While such acts might be prosecuted and punished separately, if under different statutes defining and penalizing the several acts, a single conspiracy, if covering the entire transaction, may not be split up into a plurality of offenses. Murphy v. United States (C. C. A.) 285 F. 801. There was here no proof of a conspiracy, save as it would of necessity be drawn from the concert of action between Miller and the others. In the very nature of things, this would not have occurred without prior understanding and confederation between them as to the purpose and the plan of its execution. A state of facts might appear, showing a conspiracy to remove the alcohol and a separate inde-

pendent conspiracy to transport it; but there is nothing in the evidence which warrants the conclusion that there were here two separate conspiracies—one for Miller to transport industrial alcohol, and the other for Miller to aid and abet in the removal from the warehouse of the alcohol. We would be compelled to go far afield to gather from this record proof of more than a single conspiracy, even though in effecting its purpose a plurality of substantive and severally punishable offenses may have been committed. Since the evidence warrants the conclusion that there was a conspiracy wherein Miller would aid in the general purpose of removing alcohol, tax paid and otherwise, from this plant, including the bonded warehouse thereof, and does not show a separate conspiracy to transport the alcohol after its removal, we conclude that count 1 of indictment No. 9389 is not sustained.

Our conclusion respecting these counts, as charging conspiracy, disposes of the contention that the counts state the same offense as charged in counts of the other indictment.

[4] It is contended that counts 1 and 2 of indictment No. 9390 are based on section 3296, Rev. Stats. (Comp. St. § 6038), and that this section has been repealed by the National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.), relying on United States v. Yuginovich, 256 U. S. 450, 41 S. Ct. 551, 65 L. Ed. 1043, under which this contention would, we believe, have been then well founded. But in United States v. Stafoff, 260 U. S. 477, 43 S. Ct. 197, 67 L. Ed. 358, there was considered the subsequent Act of Congress of November 23, 1921, which declares that all laws, penalties, and violations respecting taxation of and traffic in intoxicating liquors in force when the National Prohibition Act was enacted shall be continued in force, except where directly in conflict with the National Prohibition Act. As to this the court said: "For offenses committed after the new law, United States v. Yuginovich cannot be relied upon." While there, as also in the Yuginovich Case, section 3296 was not directly in issue, we believe the later case requires us to hold that section 3296 is now in force.

The contention that counts 1 and 2 of indictment No. 9390 charge the same offense is of no practical import, in that the sentence thereon was upon the two counts jointly.

[5] It is contended that the conviction under count 3 is predicated on the National Prohibition Act, that the penalty imposed ($500 fine) has been paid, and that Miller cannot be required to undergo the penalty imposed under counts 1 and 2 because that part of the Act of November 23, 1921, which says: "But if any act is a violation of any of such laws and also of the National Prohibition Act or of this act, a conviction for such act or offense under one shall be a bar to prosecution * * * under the other." Section 5 (Comp. St. Ann. Supp. 1923, § 10138⅘c). We do not think that upon the record the question arises. This proceeding is upon a writ of error charging the intervention of errors on the entire judgment. The bill of exceptions was signed April 7, 1924, assignment of errors filed February 28, additional assignment of errors April 16, præcipe for record April 9, and the clerk's certificate authenticating the transcript dated May 5. Appended to the transcript is what purports to be a statement of the clerk of the District Court, entitled in cause 9390, stating: "This is to certify from docket entries in the above and entitled cause on April 30, 1924, this office received the sum of five hundred ($500) dollars, and on May 6th, A. D. 1924, said sum was deposited in the Federal Reserve Bank. John H. R. Jamar, Clerk."

It thus appears that we are asked to pass upon a question which the record shows was never before the District Court. From the statement itself which we are asked to consider, it does not appear whether the $500 was paid upon the fine under count 3, or that imposed under counts 1 and 2, or upon the costs of the case. Neither under the writ of error, the assignment of errors, nor the quoted statement of the clerk, which bears no relation to the writ of error, is any such question before us.

[6] Error is charged in permitting witness Buchanan to read from his memorandum respecting the amount of alcohol that was in the warehouse, and in admitting exhibits of the government showing the amount of such alcohol which was on hand before the larceny; such evidence having been admitted for the purpose of showing the quantity that was taken away. It is immaterial to the charges just what quantity was taken or transported. Apart from this evidence, it abundantly appears that barrels of the stuff, tax paid and non-tax paid, were rolled out and taken away, and whether the aggregate was hundreds of gallons or thousands was quite unimportant. If there was error in this, it worked no harm to plaintiff in error.

Remarks of the district attorney, made during the trial, are urged as error. We need not discuss them all, but do not find in any

of them such seriousness as, applied to this case, would warrant disturbing the judgment. One reference was to Jesse James, making comparison with his exploits and those shown in the case at bar. That several decades since Jesse James was the head of a famous gang of robbers and burglars is commonly understood by mature persons, and there was no error in permitting reference to the quite historical career of this somewhat picturesque desperado, whose operations were confined to frontier towns and highways, and did not, as we recall, show undertakings so daring as the daylight raid on a warehouse holding valuable property, in part under the qualified control of the United States, in the second largest city of the land. Under all the evidence, we conclude it is James, rather than Miller, who would suffer in the comparison. But, whatever the remarks, under the undisputed evidence the jury could not well have reached a verdict other than of guilt.

We find no error in the court's charge to the jury, nor in the alleged failure to give certain requested charges. The jury was fairly charged, and no exception appears.

[7] Miller's counsel devote considerable space to what transpired some days after verdict and just preceding the sentence, which, it is contended, so far indicates the prejudice of the court as to require a reversal of the judgment—at least remandment for resentence. The court intimated that information had come to him that one of the witnesses had been for a time spirited away to Africa. Miller was asked whether he knew anything about this and denied it. This does not indicate improper influence operating in the mind of the court while fixing the sentence. He merely inquired into a matter, which he had a right to do, for the purpose of aiding him in the exercise of his undoubted discretion in fixing a penalty within the lawful limit. Bailey v. United States (C. C. A.) 284 F. 126.

[8] Stress is laid upon the court's statement, made after sentence, when counsel requested some delay to apply for supersedeas and present bond, to which the court replied: "I won't give you 60 minutes. Nothing would please me more than to see this man behind the penitentiary walls within the next 30 minutes." This is strong language to be employed by a judge, and, although it was after sentence, it indicated he was deeply impressed with the enormity of the offense. But the judge would surely be wanting in some wholesome human elements, and judicial qualities as well, did not the facts here

appearing profoundly impress him. And that this daring daylight burglary and larceny does not appear to have been prosecuted as such, and adequately punished, in the forum charged with this duty, might further disturb and embarrass the federal judge on whom devolved the duty of passing sentence for such subsidiary and lesser federal offenses as happen to be incidentally included in this highly criminal act. No jury was present, and Miller's case was not harmed by the possibly imprudent expression of sentiments which under the circumstances the normal judge would be most likely to entertain. It may be noted that, notwithstanding these remarks, the District Judge did allow the supersedeas and fixed the enlargement bond.

The judgment is modified, by elimination therefrom of the sentence of two years' imprisonment and $10,000 fine under count 1 of indictment No. 9389. In all other respects the judgment is affirmed, both as to indictment No. 9389, and No. 9390.