UNITED STATES v. McCONNELL et al.

(District Court, E. D. Pennsylvania. February 4, 1926.)

No. 14.

1. Indictment and information ⬤⟳136—Motion to quash is in substance a plea in bar.

Motion to quash indictment is in substance a plea in bar.

10 F.(2d)—62

2. Judgment ⬤⟳751—Acquittal held bar to subsequent prosecution under res judicata doctrine.

Acquittal of conspiracy to defraud United States by issuing withdrawal permits in violation of National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.), because of failure of attempt to prove guilty knowledge, barred second prosecution for such conspiracy by knowingly and unlawfully issuing same permits, under doctrine of res judicata; former jeopardy, within Const. Amend. 5, not being invoked.

William C. McConnell, one Slater, and one Benner were indicted for conspiracy to violate the National Prohibition Act, by issuing withdrawal permits to persons not entitled thereto. On motion to quash indictment. Motion granted. See, also, 285 F. 164.

George W. Coles, U. S. Atty., and Francis B. Biddle, Asst. U. S. Atty., both of Philadelphia, Pa.

Henry W. Braude, George S. Russell, Murdoch Kendrick, and John C. Bell, all of Philadelphia, Pa., for defendants.

THOMPSON, District Judge. The indictment contains five counts, each charging a separate conspiracy of the several defendants to commit an offense against the United States, in violation of the National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.), "to wit, to unlawfully withdraw, transport, sell, and deliver intoxicating liquors, in violation of the National Prohibition Act." McConnell is charged as federal prohibition director for the state of Pennsylvania, Slater as federal prohibition agent, and Benner as federal prohibition inspector.

Each count charges a conspiracy as part of the general charge to issue and deliver certain permits for the withdrawal of liquor to persons not lawfully entitled as permittees to receive such permits. Count 1 makes this charge as to permit No. 44051, count 2 as to permit No. 24052, count 3 as to permit No. 41603, count 4 as to permits Nos. 41601, 41602, and 41604, and count 5 as to permit No. 43389.

The third reason assigned for quashing the indictment is: "Because the defendant cannot be convicted under any of the counts of the present indictment, unless it is shown that he had knowledge of the unlawful withdrawal, transportation, sale, or delivery of liquor following the issue of permits respectively mentioned in the counts, and in the previous case it has been determined in

a prosecution by the United States against this same defendant, where such knowledge was one of the issues of the case, that he did not have knowledge of the withdrawal, transportation, sale, or delivery, following the issue of any of the permits specified in the present indictment."

"The previous case" referred to in the motion to quash was a prosecution under an indictment in this court as of March term, 1922, No. 14. To that indictment, charging a conspiracy of the present defendants and 44 others to defraud the United States in issuing and causing to be issued fraudulent permits by McConnell, Benner, and Slater to be used by others in obtaining liquor from vendors for unlawful sale, delivery, and transportation, demurrers were filed which were overruled. See United States v. McConnell et al. (D. C.) 285 F. 164.

The main question discussed upon the demurrers was whether the indictment charged was a general conspiracy among the defendants named or an attempt to join as a single conspiracy a number of separate conspiracies. It was there held that "The question whether the conspiracy charged in the indictment to be a general one among the defendants named, which is to be executed through different parties to the general conspiracy by different acts, at different times, and in different places, is indeed a single conspiracy, is a question of fact, and, if the indictment sufficiently charges such a general conspiracy formed knowingly, willfully, and unlawfully, it should not be held void because of the mere division of the entire class of conspirators into several groups having respectively different acts and functions to perform." It was also said "that each defendant knew of the general conspiracy is sufficiently averred. The question of whether or not the evidence will develop a knowledge on the part of all the defendants of the plan of the general conspiracy, and privity in the manner and means by which it was to be accomplished, does not concern us upon the demurrer. Neither does it concern us for the present purpose whether the prosecution will be able to show that what is charged to be a general conspiracy was not in fact the doing of things having similar unlawful purposes in view by separate groups, connected only at one end of the state through Wolfe with McConnell, and at the other end of the state through Slater and Benner with McConnell. Those are purely trial questions."

The defendants charged in the present indictment, together with other defendants were brought to trial under the prior indictment in this court, and upon the failure of the prosecution in any manner to connect the several groups with the general conspiracy charged, and the failure to prove knowledge upon the part of McConnell, Slater, or Benner, that the permits, upon which the indictment was based were unlawfully issued for the withdrawal of liquor in amounts and character other than those to which the permittees were lawfully entitled, or to persons not permittees, or in the names of permittees who had not made applications for permits, the defendants were acquitted upon a directed verdict. It appears conclusively that guilty knowledge concerning each of the permits upon which the several counts in the indictment now before us are based was in issue in the former indictment, and that the prosecution failed to produce any evidence of guilty knowledge of the three defendants now under indictment concerning any of the permits mentioned in the present indictment.

Count 1 of the present indictment charges the unlawful issuing of permit No. 44051, which was charged as overt acts 20 and 21 of the former indictment and in the bill of particulars. Permit No. 24052, which is the subject of count 2 of the present indictment, was also the subject of overt act 1 in the former indictment. Permit No. 41603, which is the subject of count 3 of the present indictment, was the subject of overt act 10 of the former indictment. Permits No. 41601, 41602, and 41604, which are the subjects of count 4 of the present indictment, were respectively the subjects of overt acts 6, 8, and 12 of the former indictment. Permit No. 43389, which is the subject of count 5 of the present indictment, was not the subject of a charge in the former indictment, but was the subject of paragraph 137 of the bill of particulars.

The prosecution, moreover, put the unlawful issuance of this permit in issue through an attempt to prove guilty knowledge thereof on the part of McConnell through evidence of a letter sent to him. The connection of the defendants with that permit, through knowledge of its unlawful use, therefore, became an issue at the trial of the former indictment. The fact of knowingly and unlawfully issuing the several permits was as to each permit a fact to be proved in the case, and a fact essential to the offense charged.

[1, 2] A motion to quash is, in substance, a plea in bar. United States v. Barber, 219 U. S. 72, 31 S. Ct. 209, 55 L. Ed. 99; United States v. Oppenheimer, 242 U. S. 85, 37 S. Ct. 68, 61 L. Ed. 161, 3 A. L. R. 516. The argument on behalf of the government and the cases cited in the briefs would be persuasive of the government's position, if the effect of the previous acquittal were solely based upon the guaranty of the Fifth Amendment that a person shall not be subject for the same offense to be twice put in jeopardy. But counsel for the defendant take their stand upon the doctrine of res adjudicata, rather than upon the endeavor to show that the offense charged in the prior indictment was substantially that charged in the present one, and are not invoking that doctrine in the "modified form" of the Fifth Amendment. The doctrine of res adjudicata has been repeatedly held to apply to criminal as well as civil cases.

In the case of Coffey v. United States, 116 U. S. 436, 6 S. Ct. 437, 29 L. Ed. 684, an information in rem was filed against certain property of Coffey as being forfeited to the United States for frauds under the internal revenue laws. He set up by answer a prior judgment of acquittal on a criminal information against him by the United States in the same court, alleging that the criminal information contained charges of all the violation of law alleged in the information in the proceeding in rem. In holding that the res adjudicata doctrine applied, Mr. Justice Blatchford said:

"This doctrine is peculiarly applicable to a case like the present, where, in both proceedings, criminal and civil, the United States are the party on one side and this claimant the party on the other. The judgment of acquittal in the criminal proceeding ascertained that the facts which were the basis of that proceeding, and are the basis of this one, and which are made by the statute the foundation of any punishment, personal or pecuniary, did not exist. This was ascertained once for all, between the United States and the claimant, in the criminal proceeding, so that the facts cannot be again litigated between them, as the basis of any statutory punishment denounced as a consequence of the existence of the facts. This is a necessary result of the rules laid down in the unanimous opinion of the judges in the case of Rex v. Duchess of Kingston, 20 Howell's State Trials, 355, 538, and which were formu-

lated thus: The judgment of a court of concurrent jurisdiction, directly upon the point, is as a plea a bar, or as evidence conclusive, between the same parties, upon the same matter, directly in question in another court, and the judgment of a court of exclusive jurisdiction, directly upon the point, is in like manner conclusive upon the same matter between the same parties, coming incidentally in question in another court for a different purpose. In the present case, the court is the same court, and had jurisdiction, and the judgment was directly on the point now involved, and between the same parties."

And in Frank v. Mangum, 237 U. S. 309, 35 S. Ct. 582, 59 L. Ed. 969, the rule was broadly stated by Mr. Justice Pitney as follows:

"It is a fundamental principle of jurisprudence, arising from the very nature of courts of justice and the objects for which they are established, that a question of fact or of law distinctly put in issue and directly determined by a court of competent jurisdiction cannot afterwards be disputed between the same parties. Southern Pacific Railroad v. United States, 168 U. S. 1, 48 [18 S. Ct. 18, 42 L. Ed. 355]. The principle is as applicable to the decisions of criminal courts as to those of civil jurisdiction."

The res adjudicata rule is thus stated in Southern Pacific Railroad v. United States, supra (168 U. S. 1, 18 S. Ct. 18, 42 L. Ed. 355):

"The general principle announced in numerous cases is that a right, question, or fact distinctly put in issue and directly determined by a court of competent jurisdiction, as a ground of recovery, cannot be disputed in a subsequent suit between the same parties or their privies; and even if the second suit is for a different cause of action, the right, question, or fact once so determined must, as between the same parties or their privies, be taken as conclusively established, so long as the judgment in the first suit remains unmodified. This general rule is demanded by the very object for which civil courts have been established, which is to secure the peace and repose of society by the settlement of matters capable of judicial determination. Its enforcement is essential to the maintenance of social order; for the aid of judicial tribunals would not be invoked for the vindication of rights of person and property, if, as between parties and their privies, conclusiveness did not attend the judgments of such tribunals in respect of all matters prop-

erly put in issue and actually determined by them."

In applying the res adjudicata doctrine to a criminal case, where there had been a prior acquittal upon the ground that the offense was barred by the statute of limitations, Mr. Justice Holmes said in United States v. Oppenheimer; 242 U. S. 87, 37 S. Ct. 68, 61 L. Ed. 161, 3 A. L. R. 516:

"Upon the merits the proposition of the government is that the doctrine of res judicata does not exist for criminal cases, except in the modified form of the Fifth Amendment, that a person shall not be subject for the same offense to be twice put in jeopardy of life or limb, and the conclusion is drawn that a decision upon a plea in bar cannot prevent a second trial when the defendant never has been in jeopardy, in the sense of being before a jury upon the facts of the offense charged. It seems that the mere statement of the position should be its own answer. It cannot be that the safeguards of the person, so often and so rightly mentioned with solemn reverence, are less than those that protect from a liability in debt. * * * The safeguard provided by the Constitution against the gravest abuses has tended to give the impression that when it did not apply in terms, there was no other principle that could. But the Fifth Amendment was not intended to do away with what in the civil law is a fundamental principle of justice (Jeter v. Hewitt, 22 How. 352, 364 [16 L. Ed. 345]), in order, when a man once has been acquitted on the merits, to enable the government to prosecute him a second time."

In order to determine the facts, without proof of which the charges in the present indictment cannot be sustained at the trial, it is only necessary to examine the record of the prior case to show that the foundation of proof of the conspiracy charged therein was the fact that McConnell, Slater, and Benner, as officials having authority so to do, unlawfully and knowingly issued certain permits, and that, in the present indictment, the gist of the conspiracy is that the same defendants in their official capacity knowingly and unlawfully issued the same permits. The unlawful issuing of these permits by McConnell, Slater, and Benner was therefore a question of fact. Those facts were distinctly put in issue and determined in an adjudication of this court, and cannot, therefore, be now disputed between the same parties.

The motion to quash is granted.