### SHORT et al. v. UNITED STATES.

### FENTRESS v. SAME.

Nos. 4139, 4155.

Circuit Court of Appeals, Fourth Circuit.

Aug. 6, 1937.

J. L. Broudy, of Norfolk, Va. (James M. Wolcott, M. R. Broudy, and James N. Garrett, all of Norfolk, Va., on the brief), for appellants Short and others.

Lester S. Parsons, of Norfolk, Va. (Venable, Miller, Pilcher and Parsons, of Norfolk, Va., on the brief), for appellant Fentress.

Sterling Hutcheson, U. S. Atty., of Norfolk, Va. (H. H. Holt, Jr., and Russell T. Bradford, Asst. U. S. Attys., both of Norfolk, Va., on the brief), for the United States.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

PARKER, Circuit Judge.

These appeals, which were heard together in this court, were taken by five persons, who, with fifteen others, were convicted and sentenced in the court below for the crime of conspiracy to remove and conceal distilled spirits upon which the tax had not been paid in violation of R.S. § 3296 (as amended, 26 U.S.C.A. § 1287), to defraud the United States of the tax on spirits distilled by them in violation of R.S. § 3257 (26 U.S.C.A. § 1155(f), to have unregistered stills and distilling apparatus in their possession in violation of R.S. § 3258 (26 U.S.C.A. § 1162), to carry on the business of rectifier, wholesale liquor dealer, etc., without having paid the special tax required by law with intent to defraud the United States, to engage in the business of a distiller without having given bond and with intent to defraud the United States, to make and ferment mash, wort, etc., otherwise than in a lawful distillery in violation of R.S. § 3281 (as amended, 26 U.S.C.A. §§ 1184, 1397(a) (1), to remove distilled spirits in the nighttime in violation of R.S. § 3327 (26 U.S.C.A. § 1221), and to remove, deposit, conceal, etc., materials designed to be used in the manufacture of goods as to which a tax is imposed in violation of R.S. § 3450 (26 U.S.C.A. §§ 1156, 1441). The principal points made on the appeals are: (1) That there was no proof of any general conspiracy on the part of the defendants as charged in the indictment, but, at the most, of a number of separate and minor conspiracies; (2) that there was no evidence connecting the defendants Regan or Fentress with the conspiracy; (3) that there was no proof of any of the overt acts charged in the indictment; and (4) that there was error in refusing to sustain, or to permit the jury to consider, pleas of former jeopardy interposed by defendants Nebbs and Fentress. Other points relating to the admission of evidence and the charge of the court are without sufficient merit to justify discussion.

On the first point, the evidence clearly establishes a conspiracy for the removal, concealment, and sale of distilled spirits, upon which the internal revenue tax had not been paid, by the defendants Short, O'Brien, Crosby, Nebbs, and a number of other defendants. Short and O'Brien maintained hangouts at a garage and at a lunchroom in Norfolk, Va., at which the various conspirators congregated and from which their extensive dealing in illegal liquor was directed. Short and O'Brien and their employee, the defendant Bosman, did a large business from these locations, buying liquor from distillers, having it brought to Norfolk and vicinity in automobiles by experienced rum runners, and delivering it or having it delivered to retailers. Defendants Crosby and Slack were engaged in rum running and selling in connection with Short and O'Brien. Defendants Hobbs, Fentress, and a number of others were engaged in the hauling of the liquor which was disposed of to Short, O'Brien, or Crosby, or pursuant to their direction. Nebbs, Warren, Coppersmith, Carter, Ives, and others were distillers and transporters of the liquor which they distilled, making deliveries to Short, O'Brien, Bosman, and Crosby and the rum runners working for them. Nebbs operated several distilleries in partnership with others of the defendants, and the defendant Carter testified that from the latter part of 1933 to February, 1934, he was hauling whisky every night for him in cars obtained at one of the hangouts of Short and O'Brien in Norfolk, delivering as much as 1,000 gallons of whisky a week. The evidence as a whole leaves no doubt that a general conspiracy existed between these

dealers, rum runners, and distillers for carrying on this illegal business on a large scale. While it appears that different partnerships existed from time to time between the various dealers and rum runners, it also appears that all were connected with the general conspiracy; and, while the distillers had no part in the sale of liquor to the retailers, it is clear that they knew of the general nature of the conspiracy when they made sales to the conspirators, which enabled them to carry on their unlawful business, and that they thus made themselves parties to the conspiracy. Comeriato v. United States (C.C.A.4th) 58 F.(2d) 557, 558; Simpson v. United States (C.C.A.4th) 11 F.(2d) 591, 593; Rudner v. United States (C.C.A.6th) 281 F. 516.

■ On the second point, there can be no question as to the connection of Fentress and Regan with the conspiracy. The witness Terrill (R.40) testified to paying Fentress $250 for whisky upon the direction of the defendant Crosby and stated that Fentress was at the place where witness was selling liquor for defendants Crosby and Slack "about every week." The witness Coppersmith, who was hauling liquor for defendant Nebbs and delivering it to Short and O'Brien and their confederates, testified (R.47) that the car in which he was caught by the officers with 35 five-gallon jugs of whisky was obtained by him from Fentress and Crosby in Moyock, where Nebbs was engaged in illicit distilling. And there is other evidence connecting Fentress with the conspiracy which can leave no doubt in the mind of any reasonable man as to his complicity. Regan was shown to have accompanied the defendant Bosman, who was employed by Short and O'Brien, on trips to get whisky. (R.28.) On one occasion he went with O'Brien and Hobbs to Old Trap, N. C., when Hobbs was looking for a still and when he secured a load of thirty jugs of whisky. (R.35.) He caused the title of an automobile used by the conspirators in the transportation of whisky to be registered in the name of another person, and was shown to have been with Short and Crosby when they were negotiating for a business location in Baltimore.

■■ On the third point, only one of the overt acts charged in the indictment need be proven to sustain a conviction. Jung Quey v. United States (C.C.A.9th) 222 F. 766. Seven are charged in the indictment here, and a number of them have been proven. The first alleges that the defendant Hobbs, on the ——— day of July, 1934, in the city of Norfolk, did remove and conceal a large quantity of distilled spirits upon which the tax had not been paid. Hobbs himself testified to this on the trial (R.33–35), and there can be no question on his evidence but that the removal and concealment were in furtherance of the conspiracy charged. Others of the overt acts charged were substantially proven; but it is unnecessary to go into this, as proof of one was sufficient.

■ The fourth point, i. e., the question of prior jeopardy relied upon by the defendants Nebbs and Fentress, arises as follows: The present indictment charges conspiracy as heretofore described between twenty-eight named defendants and divers other persons "to the grand jurors unknown." It alleges that the defendants conspired in the Eastern District of Virginia; but, of the overt acts charged, three are alleged to have been committed at places which lie in the Eastern District of North Carolina and two of these relate to the operation of a distillery and the removal and concealment of distilled spirits in that district. The bill was found on July 15, 1936, and the conspiracy is alleged to have existed from December, 1933, to that date.

Defendant Nebbs had pleaded guilty in the Eastern District of North Carolina to an indictment charging conspiracy to distill, sell, remove, and conceal spirits without paying the internal revenue taxes or complying with other provisions of the internal revenue laws. Violation of all of the internal laws mentioned in the present indictment, except R.S. § 3450 (26 U.S.C.A. §§ 1156, 1441), was charged as the object of the conspiracy, which was alleged to have existed for three years prior to the finding of the indictment in June, 1935, or for a period of eighteen months of the time covered by the indictment in this case. The defendant Nebbs and five other named defendants were charged in the indictment, two of whom were named as defendants in the case at bar; and the conspiracy was charged as existing between them and other persons to the "grand jurors unknown." The defendants were charged with conspiracy in the Eastern District of North Carolina; but, of the twenty-seven overt acts alleged, twelve were alleged to have been committed in the Eastern District of Virginia and involved the removing, con-

cealing, and selling within that district of distilled spirits upon which the internal revenue taxes had not been paid. None of the overt acts alleged, however, were the same as those alleged in the present indictment.

Defendant Fentress had been found not guilty in the Eastern District of North Carolina on an indictment charging a conspiracy to distill, sell, remove and conceal spirits in violation of the internal revenue laws, and, like the prior indictment in the Nebbs case, alleging as objects of the conspiracy the violation of all of the internal revenue laws mentioned in the present indictment except R.S. § 3450 (26 U.S.C.A. §§ 1156, 1441). The conspiracy was alleged to have existed for three years prior to the finding of the indictment in September, 1934, or for ten months of the period covered by the indictment in the present case. Ten other persons were charged with him as defendants therein, two of whom were named as defendants in this case; and the conspiracy was alleged to have existed between the named defendants and other persons "to the grand jurors unknown." The defendants were charged with conspiracy in the Eastern District of North Carolina; but, of the fifteen overt acts charged, four were alleged to have been committed in Virginia, and one of these related to the removal of "untaxpaid" liquor. None of the overt acts alleged appears to be identical with any of those of the present indictment; but the third overt act there charges the removal of 175 gallons of distilled spirits on or about August 5, 1934, and it is argued that this refers to the same removal of 175 gallons of distilled spirits charged in the fifth overt act of the indictment here.

Much of the evidence introduced against the defendant Nebbs on the trial below and relied upon by the government for his conviction related to transactions between December 15, 1933, and June, 1935, the period covered by both indictments, and gives ground for a reasonable inference that for this period both indictments relate to the same conspiracy. Thus the defendant Harry Coppersmith testified that he was manufacturing and hauling liquor for Nebbs from July, 1933, through 1934 from Moyock and Old Trap in North Carolina to Norfolk and South Norfolk in Virginia and turning it over to the defendant Bosman who was employed by the defendants Short and O'Brien, and that in August, 1934, he was manufacturing whisky at Moyock, N. C., at a distillery which belonged to the defendants Nebbs, Watkins, and Carter. The defendant Carter testified that he began hauling for Nebbs in the latter part of 1933 and continued till February, 1934; that he hauled approximately 1,000 gallons a week, most of it from Old Trap, N. C.; and that he and Coppersmith and two others were operating a still for Nebbs in 1934. As the North Carolina indictment charged as overt acts 7 and 8 the removal by Nebbs and Coppersmith of distilled spirits from the vicinity of Old Trap, N. C., this evidence introduced and relied upon by the government in the instant case not only tended to establish the conspiracy charged in the North Carolina indictment, but would have warranted a conviction under that indictment.

As to the defendant Fentress, one of the circumstances relied upon to connect him with the conspiracy charged in the indictment before us is that he furnished defendant Coppersmith with the car that he was operating when caught transporting 175 gallons of whisky from Moyock, N. C., on August 4, 1934. As one of the overt acts charged in the North Carolina indictment against Fentress, Coppersmith, and others was the removal of 175 gallons of distilled spirits on or about August 5, 1934, this evidence would have warranted the conviction of Fentress under the North Carolina indictment.

The defendants Nebbs and Fentress filed pleas of former jeopardy setting up the North Carolina indictments and the proceedings had thereunder, but the court overruled the motion of Nebbs that his plea be sustained and refused to direct a verdict in his behalf on the ground of former jeopardy. He overruled the plea of former jeopardy filed by Fentress and refused to permit the issue raised thereby to be argued to the jury. In the case of neither of these defendants did he submit to the jury the issue raised by the plea of former jeopardy, as we think should have been done.

The government insists that the action of the judge in overruling the pleas of former jeopardy and refusing to submit them to the jury was correct as a matter of law because of five differences between the present indictment and those returned in the Eastern District of North Carolina, viz.: (1) Difference in the periods of time covered by the conspiracies as alleged; (2)

620

difference in the places charged as the places of conspiring; (3) difference in the persons charged as coconspirators; (4) difference in the overt acts alleged to have been committed in furtherance of the conspiracies; and (5) the charging here of the violation of an additional statute (R.S. § 3450 [26 U.S.C.A. §§ 1156, 1441]) as being within the objects of the conspiracy. We agree that these differences make it impossible to say as a matter of law upon the face of the indictments that they relate to the same conspiracy; but we think that because of the generality of the language used it is likewise impossible to say upon the face of the indictments that they do not relate to the same conspiracy. The questions raised by the pleas of former jeopardy, therefore, should have been submitted to the jury under appropriate instructions from the court.

▮ "The plea of autrefois acquit," says Mr. Justice McLean in United States v. Shoemaker, Fed.Cas.No. 16,279, "consists of matter of record, and matter of fact. Of record, the indictment and acquittal of fact, that the defendant is the same person, and that the offence is the same." The same, mutatis mutandis, may be said of the plea of autrefois convict. In either case, where the record offered shows on its face the identity or nonidentity of person and offense, the question is one of law for the court: where this identity or nonidentity does not appear upon the face of the record, the question is one of fact for the jury under appropriate instructions. State v. Dewees, 76 S.C. 72, 56 S.E. 674, 675, 11 Ann.Cas. 991; Daniels v. State, 78 Ga. 98, 6 Am.St.Rep. 238; State v. Cale, 150 N.C. 805, 63 S.E. 958, 134 Am.St.Rep. 957; 8 R.C.L. 120; 16 C.J. 925; note, 58 Am.Dec. 547; note, 11 Ann.Cas. 993. It is well settled that where, as here, a prior indictment is indefinite as to the offense charged, as in the case of a conspiracy charged between named defendants and other persons to the grand jurors unknown, the identity of the offenses may be shown by parol. Bartell v. United States, 227 U.S. 427, 433, 33 S.Ct. 383, 57 L.Ed. 583; Durland v. United States, 161 U.S. 306, 314, 315, 16 S.Ct. 508, 40 L.Ed. 709; Dunbar v. United States, 156 U.S. 185, 191, 15 S.Ct. 325, 39 L.Ed. 390; United States v. Claflin, Fed.Cas.No. 14,798.

▮ As to the differences in the periods of time covered by the indictments, it is to be noted that all charge continuing con-spiracies and that the indictment in the case at bar covers a portion of each of the periods covered by the North Carolina indictments. It is well settled that, where a continuing offense such as conspiracy is charged as having been committed within a stated period, an acquittal or conviction will bar another prosecution for the same offense alleged as having been committed within a period which overlaps any part of the former period. The reason is that proof of the commission of the offense during the overlapping period is sufficient to sustain a conviction under either of the indictments; and the accused is thus subjected to double jeopardy as to offenses committed within that period. Commonwealth v. Robinson, 126 Mass. 259, 30 Am. Rep. 674; Commonwealth v. Peretz, 212 Mass. 253, 98 N.E. 1054, Ann.Cas.1913D, 484; Webb v. State, 13 Ga.App. 733, 80 S.E. 14; United States v. Swift (D.C.) 186 F. 1002, 1015; 16 C.J. 268; note, 92 Am. St.Rep. 135. See, also, Ex parte Nielsen, 131 U.S. 176, 9 S.Ct. 672, 33 L.Ed. 118, and In re Snow, 120 U.S. 274, 7 S.Ct. 556, 30 L.Ed. 658. It is clear, therefore, that something other than the difference in the periods during which the defendants are alleged to have conspired must be relied upon to bar the pleas of former jeopardy.

▮ And the fact that the indictment in the case at bar charges that the defendants conspired in the Eastern District of Virginia, whereas the North Carolina indictments charge the conspiring in the Eastern District of that state, does not show necessarily that the crimes charged are not the same. As heretofore pointed out, the indictment before us charges overt acts in furtherance of the conspiracy to have been committed in the Eastern District of North Carolina as well as in the Eastern District of Virginia, and the North Carolina indictments charge overt acts in furtherance of those conspiracies to have been committed in the Eastern District of Virginia as well as in the Eastern District of North Carolina. All, therefore, charge the crime of conspiracy to have been committed in both districts, in either of which it might have been prosecuted and punished. Brown v. Elliott, 225 U.S. 392, 400, 32 S.Ct. 812, 56 L.Ed. 1136; Hyde v. United States, 225 U.S. 347, 363–366, 32 S.Ct. 793, 56 L. Ed. 1114, Ann.Cas.1914A, 614. It is the "partnership in criminal purposes" which constitutes the crime (United States v. Kissel, 218 U.S. 601, 608, 31 S.Ct. 124, 54

L.Ed. 1168), and this partnership exists and is punishable wherever an overt act is committed by one of the conspirators in furtherance thereof, as well as in the district in which the conspiracy was entered into. As was said by the Supreme Court in Hyde v. United States, supra, at pages 365–366 of 225 U.S., 32 S.Ct. 793, 801, 56 L.Ed. 1114, Ann.Cas.1914A, 614, quoting with approval the statement of Marcy, J. in People v. Mather, 4 Wend.(N.Y.) 229, 261, 21 Am.Dec. 122;

"If conspirators enter into the illegal agreement in one county, the crime is perpetrated there, and they may be immediately prosecuted; but the proceedings against them must be in that county. If they go into another county to execute their plans of mischief, and there commit an overt act, they may be punished in the latter county without any evidence of an express renewal of their agreement. *The law considers that wherever they act, there they renew, or perhaps to speak more properly, they continue, their agreement, and this agreement is renewed or continued as to all whenever any one of them does an act in furtherance of their common design.* In this respect, conspiracy resembles treason in England, when directed against the life of the King. The crime consists in imagining the death of the King. In contemplation of law, the crime is committed wherever the traitor is and furnishes proof of his wicked intention by the exhibition of any overt act." (Italics ours.)

Nor are the charges shown to be different because the indictment before us specifically names a number of persons not named as defendants in the North Carolina indictments and those indictments specifically name persons not named in the indictment here. Each of the North Carolina indictments names as defendants two persons, in addition to the defendant here interposing the plea of former jeopardy, who are indicted with him in the indictment before us; and each of those indictments, as does the indictment here, charges that the named defendants conspired, not only with each other, but also with other persons to the grand jurors unknown. Convictions under the North Carolina indictments could have been had, therefore, upon proof of conspiracy between any of the defendants there named and any other person; and the same is true of the indictment here. Grove v. United States (C.C.A.4th) 3 F.(2d) 965; McDonald v. United States

(C.C.A.8th) 9 F.(2d) 506; Donegan v. United States (C.C.A.2d) 287 F. 641. In such situation, the rule is peculiarly applicable that parol evidence may be looked to for the purpose of determining whether or not the crime prosecuted under the prior indictment is the same as that with which the defendant here stands charged. Durland v. United States, supra, 161 U.S. 306, 314, 315, 16 S.Ct. 508, 40 L.Ed. 709.

The difference in the overt acts charged has been held in a few cases to differentiate the crimes as matter of law. Henry v. United States (C.C.A.1st) 15 F. (2d) 365; Ferracane v. United States (C. C.A.7th) 29 F.(2d) 691, 693, dissented from by Judge Alschuler. These cases proceed upon the theory that, as proof of the overt acts charged under one indictment would not support conviction under the other, the offenses charged must be held different. We think, however, that these cases proceed upon a false assumption. It is true that proof of an overt act is necessary under the statute to a conviction, but the crime is the conspiracy and not the overt act. The conspiracy is a "partnership in criminal purposes" and may have "continuation in time." It is constituted by an agreement, but it is the result of the agreement rather than the agreement itself. United States v. Kissel, 218 U.S. 601, 608, 31 S.Ct. 124, 54 L.Ed. 1168. The effect of the requirement of an overt act is merely to furnish a locus poenitentiæ. Hyde v. Shine, 199 U.S. 62, 76, 25 S.Ct. 760, 50 L.Ed. 90; United States v. Britton, 108 U.S. 199, 204, 2 S.Ct. 531, 27 L.Ed. 698. As above stated, only one overt act need be alleged or proven to justify conviction of a continuing conspiracy extending over a period of years in the furtherance of which many overt acts may have been committed; and to hold that a difference in the overt acts charged in the indictments constitutes a difference in the charge of crime would permit the prosecution of the same conspiracy as many times as there are acts done in furtherance of it. This cannot be the law. As was well said by Judge Alschuler in his dissenting opinion in the Ferracane Case: "While the overt act is an essential element of the statutory offense, the unlawful agreement is, after all, the real gist of the offending, the doing of an overt act marking the limit for repentance, or abandonment of the unlawful undertaking, and to that extent ameliorating the former general rule that the unlawful

agreement alone was sufficient. That each separate nod, gesture, or other act done in execution of the same unlawful agreement to commit an offense, may subject the alleged conspirators to several convictions and punishments is, to my mind, untenable."

 It is contended that the present indictment charges a crime different from the North Carolina indictments in that it charges a violation of R.S. § 3450 (26 U.S. C.A. §§ 1156, 1441) as an object of the conspiracy, whereas a violation of that statute is not alleged as an object of the conspiracy in the North Carolina indictments. The answer to this is that all of the indictments allege in general terms a conspiracy to distill, conceal, and remove spirituous liquors in violation of the internal revenue statutes, and such conspiracy necessarily contemplates the doing of the acts forbidden by R.S. § 3450, whether the violation of that statute be mentioned as an object of the conspiracy or not. In addition, it is well settled that an indictment charging as the object of a conspiracy the violation of a number of statutes is sustained by proof of conspiracy to violate any one of them. McWhorter v. United States (C.C.A.5th) 62 F.(2d) 829; United States v. Baker (C.C.A.2d) 61 F. (2d) 469; Kepl v. United States (C.C.A. 9th) 299 F. 590, 591. A conviction under the present indictment, therefore, would be sustained without reference to whether there was or was not proof of intent to violate R.S. § 3450, in other words, by proof that would support a conviction under the North Carolina indictments; and the general rule is that identity of charges is established when it is shown that the same proof will support both. Gavieres v. United States, 220 U.S. 338, 31 S.Ct. 421, 55 L.Ed. 489; Ex parte Nielsen, 131 U.S. 176, 9 S.Ct. 672, 33 L.Ed. 118; Bertsch v. Snook (C.C.A.5th) 36 F.(2d) 155; Morey v. Commonwealth, 108 Mass. 433; Tritico v. United States (C.C.A.5th) 4 F.(2d) 664.

 The crime charged in the North Carolina indictments, as well as in the indictment before us, is conspiracy to manufacture, remove, and conceal distilled spirits in violation of the internal revenue laws, not the specific violation of those laws which are the objects of the conspiracy. Such a conspiracy is a single crime, even though it may contemplate the doing of acts which will violate a number of statutes; and it cannot be split up into a number of offenses by charging in different indictments the violation of different ones of these statutes as objects of the conspiracy. To permit this would be, not only to permit the same conspiracy to be prosecuted a number of times in violation of the rule against double jeopardy, but also to permit the punishment prescribed by Congress to be increased without authority of law. When a conspiracy has been once prosecuted, therefore, the rule against double jeopardy forbids that it be prosecuted again under an indictment which merely adds allegations as to its objects, as that the violation of an additional statute was contemplated by it.

It is to be noted that the rule in case of prosecution for conspiracy to violate statutes is different from the rule applicable in prosecutions for violation of the statutes themselves. In the latter case, in the absence of circumstances giving rise to the doctrine of merger, there may be a separate prosecution for each of the statutes violated without any splitting of offenses; for each of the statutory crimes involves a different element. In the case of conspiracy, however, the gist of the crime is the unlawful agreement, or partnership in criminal purposes thereby created; and one conspiracy does not become several because it may incidentally involve the violation of several statutes. As said by Judge Grubb, speaking for the Circuit Court of Appeals of the Fifth Circuit in Norton v. United States (C.C.A.5th) 295 F. 136, 137: "The fact that the conspiracy contemplated numerous violations of law as its object does not make the indictment duplicitous. The gist of the offense is the conspiracy, and it is single, though its object is to commit a number of crimes." And the rule against splitting a conspiracy for purposes of prosecution was thus stated by Judge Lindley in United States v. Weiss (D.C.) 293 F. 992, 994: "At the threshold it must be noted that the government cannot split up one conspiracy into different indictments, and prosecute all of them, but that prosecution for any part of a single crime bars any further prosecution based upon the whole or a part of the same crime. Murphy v. U. S. (C.C.A.) 285 F. [801], 804, at page 816; In re Snow, 120 U.S. 274, 7 S.Ct. 556, 30 L.Ed. 658; 16 Corpus Juris, 270, and cases there cited."

The case of Murphy v. United States, cited by Judge Lindley in the foregoing quotation, was a decision of the Seventh

Circuit and is directly in point on the question here involved. It was there held that in the case of a conspiracy to rob a mail truck there could not be separate convictions of conspiracy to hold up and rob the truck and of conspiracy to have and conceal the stolen property, although two separate substantive offenses were created by the statutes which severally were alleged as objects of the two conspiracies. The court, speaking through Judge Evans, said (285 F. 801, 817): "It may be admitted that separate conspiracies may be thus formed, to effectuate which different plans involving perhaps different conspirators are formulated. We need not decide any such imaginary case, but content ourselves with a decision applicable to the facts in this case. *The evidence leaves no room for legitimate discussion. It conclusively establishes but one conspiracy.* There was no separate conspiracy to have and to conceal the stolen property, and no evidence tending to show such separate combination. The Fifth Amendment to the Constitution protects all against double punishment for the same offense. Its enforcement and its application demand a test which is a practical, not a theoretical one. *It is the evidence, and not the theory of the pleader, to which we must look to determine this issue.* And it is needless to add that one accused of crime, regardless of kind or magnitude of the offense, is entitled to the protection of this section of the Constitution." (Italics ours).

The Murphy Case was followed in the Seventh Circuit by the case of Miller v. United States (C.C.A.7th) 4 F.(2d) 228, 230, which involved an attempt to punish as two conspiracies under separate counts one conspiracy for the removal of spirits from a bonded warehouse, one count of the indictment charging conspiracy to violate the statute against removal, and the other charging conspiracy to violate the statute against unlawful transportation. The court, speaking through Judge Alschuler, said:

"It is contended that the two counts are for the same offense, and that in any event the evidence does not warrant separate cumulative penalties under these counts. That there was a conspiracy between Miller and others to steal or aid in stealing and removing from the warehouse this large quantity of alcohol, there is, under the record, no shadow of doubt. Stealing the alcohol naturally involved the seizing of it where it was and transporting it elsewhere. While such acts might be prosecuted and punished separately, if under different statutes defining and penalizing the several acts, a single conspiracy, if covering the entire transaction, may not be split up into a plurality of offenses. Murphy v. United States (C.C.A.) 285 F. 801. There was here no proof of a conspiracy, save as it would of necessity be drawn from the concert of action between Miller and the others. In the very nature of things, this would not have occurred without prior understanding and confederation between them as to the purpose and the plan of its execution. A state of facts might appear, showing a conspiracy to remove the alcohol and a separate independent conspiracy to transport it; but there is nothing in the evidence which warrants the conclusion that there were here two separate conspiracies—one for Miller to transport industrial alcohol, and the other for Miller to aid and abet in the removal from the warehouse of the alcohol. We would be compelled to go far afield to gather from this record proof of more than a single conspiracy, even though in effecting its purpose a plurality of substantive and severally punishable offenses may have been committed. Since the evidence warrants the conclusion that there was a conspiracy wherein Miller would aid in the general purpose of removing alcohol, tax paid and otherwise, from this plant, including the bonded warehouse thereof, and does not show a separate conspiracy to transport the alcohol after its removal, we conclude that count 1 of indictment No. 9389 is not sustained."

The same rule has been laid down by the Fifth Circuit, where the court, speaking through Judge Bryan in Powe v. United States (C.C.A.5th) 11 F.(2d) 598, 599, said: "The first count of the indictment in this case charges a conspiracy to commit a single offense, which is included within the continuing conspiracy charged in the second count. According to the testimony there was one general continuing conspiracy to commit a number of offenses, and no separate conspiracy to commit a single offense. The government cannot split up one conspiracy and make several conspiracies out of it. In re Snow, 120 U.S. 274, 7 S.Ct. 556, 30 L.Ed. 658; Norton v. United States (C.C.A.) 295 F. 136; 16 C. J. 207. The conspiracy to transport charged in the first count is but a part of the conspiracy to sell and deliver charged in the second count. The result is that

the second count covers everything which was to be done under the conspiracy, and there was no evidence to sustain a conviction under the first count." See, also, United States v. McKee, Fed.Cas.No. 15,-688; United States v. Miner, Fed.Cas.No. 15,780; Roberts v. United States (C.C.A. 8th) 283 F. 960; United States v. McConnell (D.C.) 10 F.(2d) 977; Sprague v. Aderholt (D.C.) 45 F.(2d) 790.

■■■ Blanket charges of "continuing" conspiracy with named defendants and with "other persons to the grand jurors unknown" fulfil a useful purpose in the prosecution of crime, but they must not be used in such a way as to contravene constitutional guaranties. If the government sees fit to send an indictment in this general form charging a continuing conspiracy for a period of time, it must do so with the understanding that upon conviction or acquittal further prosecution of that conspiracy during the period charged is barred, and that this result cannot be avoided by charging the conspiracy to have been formed in another district where overt acts. in furtherance of it were committed, or by charging different overt acts as having been committed in furtherance of it, or by charging additional objects or the violation of additional statutes as within its purview, if in fact the second indictment involves substantially the same conspiracy as the first. And, if two indictments charging continuing conspiracy and covering the same period in whole or in part are drawn with blanket coverage "with other persons to the grand jurors unknown," a plea of former jeopardy should be submitted to the jury if there is proof that the same partnership in criminal purposes is prosecuted by both, even though the appearance of identity of offenses may have been avoided in the indictment by charging a different place of conspiracy, or by joining additional defendants, or by charging different overt acts, or by charging the violation of additional statutes as being among the objects of the conspiracy. The constitutional provision against double jeopardy is a matter of substance and may not be thus nullified by the mere forms of criminal pleading.

■■■ As heretofore stated, it does not appear from the face of the indictment that the conspiracy here prosecuted was the same as that for which the defendants Nebbs and Fentress were prosecuted in the Eastern District of North Carolina. On the other hand, as it does not appear that it was not the same conspiracy, and there is evidence from which the inference may be drawn that it was, the jury should have been permitted to pass upon that question. We think that we should point out, however, that under general indictments of the character here involved the fact that evidence introduced and relied on in the trial below would have warranted conviction under the North Carolina indictments is not alone determinative of the question raised by the pleas of former jeopardy. To sustain such plea, it must appear that the conspiracy here prosecuted is the same as that for which the prior prosecution was had; and whether or not it is the same must be determined from evidence as to the conspiracy involved in the prior prosecution. Durland v. United States, supra. If the conspiracy there prosecuted be shown to relate to the operation of particular stills or to particular acts of removal and concealment without relation to the general conspiracy here involved, the plea of former jeopardy will necessarily fail for failure to show the identity of the offenses involved in the two prosecutions; for it is entirely possible for the defendants to have been parties to such a conspiracy and to a different general conspiracy at the same time. If, however, it shall appear that the operations prosecuted under the North Carolina indictments were but parts of the general conspiracy here prosecuted, defendants who have interposed the pleas of former jeopardy should have their contentions with respect thereto submitted to the jury under appropriate instructions.

It follows that the judgment appealed from will be affirmed as to the appellants Short, Crosby, and Regan, and will be reversed and a new trial granted as to the defendants Nebbs and Fentress.

No. 4139, affirmed in part and reversed in part.

No. 4155, reversed.

NORTHCOTT, Circuit Judge (dissenting in part).

While concurring in the conclusion reached in the above opinion as to Short, Crosby, and Regan, I cannot concur in the conclusion as to Nebbs and Fentress.

In the trials of Nebbs and Fentress in North Carolina the conspiracies were alleged to have been formed in North Carolina. Here the conspiracy was alleged to have been formed in Virginia. Acquittal

or conviction on the charge of engaging in a conspiracy in one state is no bar to a trial on the charge of engaging in a conspiracy in a different state. Lucas v. United States (C.C.A.) 275 F. 405, certiorari denied, 258 U.S. 620, 42 S.Ct. 272, 66 L.Ed. 795. Marshall v. State of Nebraska, 6 Neb. 120, 29 Am.Rep. 363; Campbell v. People, 109 Ill. 565, 50 Am.Rep. 621.

The overt acts alleged in the indictment in the instant case were entirely different from those alleged in the North Carolina indictments and this again distinguishes the offenses charged in North Carolina from the one charged here. Francis v. United States (C.C.A.) 152 F. 155. Ferracane v. United States (C.C.A.) 29 F.(2d) 691. Henry v. United States (C.C.A.) 15 F.(2d) 365.

"Before a plea of former acquittal can be sustained the offenses involved must be identical in law and fact. If the offenses are distinct in law, the plea is bad regardless of how closely they are connected in point of fact." Piquett v. United States (C.C.A.) 81 F.(2d) 75, 79.

In a well-considered opinion in the latter case will be found a discussion of the principles applicable here and citation of a number of authorities.

There is still another and stronger reason why the charge in the indictment here was shown to be for a different offense than that charged in the North Carolina indictments. In the instant indictment there is a charge that the appellants conspired to violate section 3450, Revised Statutes (Title 26, sections 1156, 1441, U.S.C.A.). Conspiracy to violate this section was not charged in the North Carolina indictments against either Nebbs or Fentress, and it follows that they could have been tried and found guilty or not guilty as charged in the North Carolina indictments and not have been in jeopardy as to the charge of conspiring to violate this section of the laws of the United States in Virginia. Trial of charge of conspiracy to violate one section of the laws of the United States is no bar to a trial on charge of conspiring to violate an entirely different section. One could be found not guilty of violating the section dealing with the carrying on of the business of a distiller without having paid the tax and yet be guilty of conspiring to feloniously conceal materials to be used in the making of commodities in respect to which certain tax is imposed as is provided in section 3450, R.S.

The same transaction may constitute separate offenses under different statutes. Piquett v. United States, supra, and authorities there cited.

The offenses charged in the instant indictment are not the same as those charged in the North Carolina indictments. The overt acts charged were not the same and the sections charged to have been violated were not the same. The appellants Nebbs and Fentress could have been engaged in a conspiracy in each state and be guilty of a crime as to each conspiracy. The trial judge was clearly right in overruling the pleas of former jeopardy, as a matter of law. The judgment should be affirmed as to Nebbs and Fentress.